(18 Misc. Rep. 538.)

## STEVENS v. ORTON. SAME v.· SMITH. SAME v. WHITE.

(Supreme Court, Special Term, Oneida County. November, 1896.)

1. BONDS—WHEN A CONTINUING OBLIGATION.
   The official bond of the cashier of a bank, given when first taking his
   office, is a continuing obligation, where its conditions are unlimited as to its
   duration, and his original appointment was for an indefinite period, and the
   by-laws of the bank provide that his appointment shall be during the pleasure
   of the board of directors, and the statute under which his appointment is
   made authorizes his appointment until he is dismissed at the pleasure of the
   board (Rev. St. U. S. § 5136, subd. 5), though he is re-elected annually as
   an incident to fixing his salary for the ensuing year.

2. COUNTERCLAIM—AGAINST A BOND—WHEN REPLY FILED.                      .    · .
   Defendant, in an action on the official bond of a bank cashier, is not
   entitled. to a judgment on his counterclaim because no reply was served,
   where the counterclaim fails to allege that the bond mentioned therein is
   the one sued on, or that defendant· is a surety on it, or that he has any inter-
   est in, or relationship to, the transaction set up as the basis of the counter-
   claim.

3. SAME—INDEPENDENT TRANSACTION—WHEN NOT ALLOWABLE.
   A counterclaim in an action on the official bond of a bank cashier is de-
   fective where defendant, who was a surety on the bond, alleges in his coun-
   terclaim that the cashier made another surety trustee for the benefit of de-
   fendant, and that the trustee· diverted the property, whereby it. passed into
   the hands of the receiver of the bank, but does not allege that defendant
   requested the trustee to bring an action against the receiver for said secu-
   rities or their value, and that he refused so to do.                    ·

Separate actions by Jim Stevens, as receiver, against Albert W.
Orton, S. S. T. Smith, and Frank White, on a bond. Judgment
for plaintiff.

H. S. Bedell and Thomas S. Jones, for plaintiff.
Bliss & Briggs, for defendant Orton.
Sayles, Searle & Sayles, for defendant Smith.
Silas L. Snyder, for defendant White.

WRIGHT, J. These actions are brought by the plaintiff against
the defendants to recover the amount of a bond executed by them
as sureties for one John E. Bielby, who was cashier of the bank
of which the plaintiff is receiver. The bond is dated March 18;
1888, and is for the sum of $20,000, and was given by the defend-
ants to the Central National Bank of Rome, and conditioned that,
"if the said John E. Bielby shall faithfully, fairly, and honestly
perform his duties in the said bank as cashier as aforesaid in all
respects, then the foregoing obligation to be void; otherwise, re-
main in full force and virtue." Bielby was appointed cashier the
27th day of February, 1888, and continued as such cashier until
the 17th day of December, 1894, when the bank suspended busi-·

ness. Between the 1st day of October, 1889, and the 17th day of December, 1894, the cashier, Bielby, at various times unlawfully appropriated to his own use the money of said bank in a sum exceeding $30,000. During all this period, from the said appointment of the cashier down to the date when the bank closed, December 17, 1894, the defendant Orton was the president, and the defendants Smith and White were directors, of said bank. The plaintiff claims that the bond is a continuing one, and the defendants contend that it was in force only during the first year of Bielby's service as cashier; and that, since his defalcations occurred after his first year's service, they are not liable on the bond. To solve this question, we must refer—First, to the statute under which he was appointed; second, to the resolution by which he was appointed; third, the terms of the bond itself; and, fourth, the action of the board of directors of the bank taken subsequently to the first appointment.

The United States Revised Statutes (section 5136, subd. 5) provides as follows: The banking association is empowered "* * * by its board of directors to appoint a president, vice-president, cashier, · * * * require bonds of them, * * * dismiss such officers * * * at pleasure, and appoint others to fill their places." The by-laws of this bank provide: "The cashier and the subordinate officers shall be appointed and hold their offices respectively during the pleasure of the board." Also: "Resolved, that the cashier of this bank be the secretary ex officio of the board of directors of this bank until this resolution is formally rescinded." The following is the record of the original election of Bielby as cashier by the board of directors, February 27, 1888: "M. C. West moved that John E. Bielby be elected cashier, his services to commence immediately; which motion was duly seconded, and, after a full consideration, was unanimously carried." The following are the proceedings taken thereafter with reference to Bielby by the board of directors, as appears from their minutes, viz.: In January, 1889, it was moved "* * * that J. E Bielby be cashier, * * * and that his salary be $1,800." In January, 1890, on motion, "* * * J. E. Bielby, cashier, was to receive the salary of $2,000 for the ensuing year." In January, 1891, on motion, "* * * the present employés of the bank were retained for the ensuing year, viz. J. E. Bielby, cashier, * * * at $2,000 * * * for the ensuing year." In January, 1892, "J. E. Bielby was appointed cashier at an annual salary of $2,000." In January, 1893, "J. E. Bielby was chosen cashier * * * at the same salary as last year." In January, 1894, "A. W. Orton was chosen president; * * * J. E. Bielby, cashier, at a salary of $2,000 a year."

Under the United States Revised Statutes, above mentioned, Bielby's official term, on his appointment, was until he should be dismissed. Under the by-laws above quoted, his term, on his appointment, was "during the pleasure of the board." The pleasure continued uninterruptedly, and with frequent affirmations, as shown by the proceedings of the board of directors above quoted,

until the bank closed its business. His re-election constituted a new term, if his original term had expired; otherwise not. No resolution of the board was ever passed changing said original term from one "during the pleasure of the board" to an annual term, or any other definite period. When Bielby was appointed, his salary was fixed at $1,500 "for the first year," as he testifies. Thus his salary was not fixed for an annual term, but for the first year of his indefinite term, "during the pleasure of the board." His salary was increased twice thereafter, and each time of his annual re-election was the occasion when his salary was fixed for the ensuing year; and it is apparent that the action of the board with reference to Bielby's office was taken, not for the purpose of annulling or limiting the force of the original appointment, and reducing it to an annual office, but for the purpose of fixing his salary, and, incidentally, to manifest approbation of his ability and supposed fidelity to his trust.

The condition of the bond is in harmony with the statute and the by-laws above cited, and the above interpretation of the intention of the board in the proceedings above mentioned. It provided that "Bielby shall faithfully, fairly, and honestly · perform his duties in said bank as such cashier." No limited term is here mentioned. The sense and legal force are clearly brought out by simply inserting the word "while," making the clause read: "Bielby shall faithfully, fairly, and honestly perform his duties while in said bank as cashier," etc.; and, in the light of all the proofs and surrounding circumstances, the bond should be so read. The condition of the bond in this case is substantially the same as the bond in Bank v. Chickering, 3 Pick. 335, which read as follows: He "shall well and faithfully execute and perform all the duties of cashier of said Dedham Bank, to which office he has been duly appointed, without fraud, * * * so long as he shall continue in said office." The court said:

"In some cases, * * * where by the recital [in the bond] it appeared that the office was annual, it has been held that the obligation should be understood as referring to an office so limited. We should go even further, and say that where it appears by the records of a corporation that the office, by their regulations, is an annual one, the bond should be restricted. And all this is founded on the intent of the parties. But the case before us does not seem to be one of that sort. The terms of the bond are general. There is nothing in it to show that a restriction was intended, and nothing in the records or regulations of the bank indicating that the office was annual. We do not think that the re-elections of Chickering prove it to be such. He would have remained in office without a new election. There was nothing to make the sureties suppose it was limited to a year, but they must have signed thinking they should be responsible for so long a period as Chickering should continue to be cashier."

This case was cited with approval in Com. v. Reading Bank, 129 Mass. 73, decided in 1889.

In Bank v. Root, 2 Metc. (Mass.) 522, the cashier was appointed in 1831, and reappointed in 1832. He gave a bond in 1831, but none thereafter. In 1836 and in 1837 he was guilty of default. The records of the board of directors for 1831 and 1832 show that in each of those years he was appointed for the year ensuing. The bond was conditioned as follows:

"Whereas, the directors of the Amherst Bank aforesaid have appointed the above-named Luther Root cashier of the bank aforesaid: Now, if the above-named Luther Root shall well, truly, and faithfully perform the duties of the office of cashier of the bank aforesaid, then this obligation to be null and void; otherwise to remain in full force and virtue."

## The court says:

"It is very manifest that by the terms of this condition the obligation is unlimited in time, and undertakes for the faithful conduct of the cashier as long as he shall continue in office. * * * By this act [Laws 1828, c. 96, § 9] the directors shall have power to appoint a cashier, clerks, etc., and such cashiers * * * shall retain their places until removed therefrom, or others are appointed in their stead. We think, therefore, that when Luther Root was elected cashier, in October, 1831, even if it was entered in the directors' minutes as an election for the year ensuing, it not being by law an annual office, he held it by force of the provisions of the general law above stated until another was chosen in his stead. * * * The consideration that the directors held their office by the annual election of the stockholders obviously has no weight in controlling or modifying a positive provision of law, making the office of cashier indefinite. The directors are presumed to know the general law. They consequently know, when they come into office, that the cashier whom they find there will, by law, continue in his office, unless they think fit to remove him. Their act [of re-election] is to be taken in connection with their presumed ·knowledge of the law in this respect. But it may be satisfactory to them, constituting in theory, and sometimes in fact, a new board of directors, and also satisfactory to the cashier, that they should express their will and intention upon the subject. Under such circumstances the election of the cashier to an office which he already holds, and would hold without election, must be regarded as a manifestation of their will and intent that he should continue to hold the office for another year, unless there should be cause afterward to remove him. That such an election is considered by the directors themselves as the continuance of an existing office, and not the commencement of a new one, is manifest from the fact that they require no new bonds."

In Elam v. Bank, 86 Va. 92, 9 S. E. 498, decided in 1889, the cashier was appointed in 1873, and he gave the required bond. He continued as cashier until 1885, being annually elected, but gave no new bond. The sureties on the bond were directors of the bank. The default occurred after the first year. The court says:

"The bond, in its terms, has no limit as to duration, and is certainly broad enough to cover a continuing liability; and if it falls, as we think it does, within the purview * * * of the Code of 1873, it is clearly a continuing obligation; for, the cashiers referred to in those chapters [of the Code] hold during the pleasure of their respective boards. * * * It seems patent, unless we are to charge these sureties, who are also directors, with a gross violation of duty in not demanding a new bond, that they must construe the bond as continuing."

The defendant cites Welch v. Seymour, 28 Conn. 387. In that case the bond was unlimited as to time, but the constitution of the corporation provided that "all the officers * * * should continue in office until the next annual meeting, and until others should be elected in their stead." It was held that, the terms of office being fixed and limited by the first clause as annual, the effect of the latter clause was to continue the bond only for such time after the expiration of the year as was reasonably sufficient for the election and qualification of a successor, in order to prevent a lapse of office. To the same effect is the decision in the case of Insurance Co. v. Clark, 33 Barb. 196. The other citations by the defendant are also to cases where the terms of office were fixed by statute or the by-laws for a definite length of time, as

those of postmasters, or collectors of taxes, and the like.   There-
fore we have the rule that, where a cashier of a bank gives a bond,
which, in its conditions, is general and unlimited as to the period
of its force and validity, and his original appointment was for
an indefinite period, and the by-laws of the bank provide that his
appointment shall be during the pleasure of the board of direct-
ors, and the statute under which the appointment is made author-
izes his appointment until he is dismissed at the pleasure of the
board, his official term continues during the pleasure of the board,
and until dismissed by the action of the board; and his formal
re-election annually thereafter at the time of fixing his salary for
the ensuing year does not establish an intention, nor have the
effect, of changing his official term, and limiting it to an annual
one.   The bond, therefore, covers all defalcations of which he is
guilty during the entire period of the performance of his duties.

The defendant White claims to be entitled to judgment on his
counterclaim of $15,000, because no reply was served.   No testi-
mony was introduced thereunder.   The plaintiff contends that
sufficient facts are not alleged to constitute a counterclaim.   The
following is the allegation:

"Fourth defense: Said defendant, for a further answer and defense, alleges
* * * that at the time said bank closed its doors, in December, 1894, said Bielby
was the owner of * * * valuable securities, aggregating * * * about $15,-
000, * * * [and] delivered * * * said securities to one S. S. T. Smith, one
of his co-sureties, under the express direction to apply the amount thereof * * *
as payment on any sum his said sureties might be liable to pay on his bond; that
one Van Vranken * *, * demanded that said securities be delivered to him,
claiming that they belonged to * * * said bank; that thereupon said Smith
* * * delivered said securities, under protest, to said Van Vranken; and * * *
said securities, having been diverted from the purpose * * * and direction of
their owner, are now in the possession of this plaintiff, claimed to be the property
of said bank."

The defendant demands judgment for the amount of said se-
curities as a counterclaim, etc.

It does not appear in this allegation that the bond mentioned
is the one on which these actions are brought, or that the defend-
ant White is a surety thereon, or that he has any interest in or
relationship to the transaction alleged in the counterclaim.   No
reference is made in this "fourth defense" to any prior allegation in
the answer.   The allegation is clearly insufficient, for it fails to
allege facts sufficient to constitute an independent cause of action
against the plaintiff.   Walker v. Insurance Co., 143 N. Y. 167, 38
N. E. 106.   "A counterclaim must be complete in itself, and alle-
gations contained in another part of the answer, not referred to
in the counterclaim, cannot avail to help out the pleading."   Boyd
v. McDonald (Sup.) 12 N. Y. Supp. 356; Cragin v. Lovell, 88 N. Y.
258.   The plaintiff, in omitting to reply, did not waive his objec-
tion that the matter alleged does not give a right to a counter-
claim, because that is a question of law.   Abbott's Trial Brief
on Pleadings, § 660; Jordan v. Bank, 74 N. Y. 467; Lipman v.
Iron Works, 128 N. Y. 58, 27 N. E. 975.   Further, considering the
counterclaim in connection with the whole answer, and apart from

the technical rules of pleading above stated, the pleading is bad. It is Smith, and not White, who, if any one, is entitled to maintain an action against the plaintiff for the value of the securities. The allegation is that Bielby made Smith his trustee for the benefit of White; and that Smith diverted the property, whereby it came into the possession of the bank. It is not alleged that White, the beneficiary, has requested the trustee, Smith, to bring an action against the plaintiff for said securities, or their value, and such demand and a refusal by the trustee are a prerequisite to White's having a right to bring such action, or to set up said matter as a counterclaim; and the trustee should be made a party to such an action, because the title to the securities and the right to their possession, for the purpose of executing the trust, were in Smith. In Railroad Co. v. Nolan, 48 N. Y. 513, the rule is laid down as follows:

"Trustees in whom is the title to a trust fund are the proper parties plaintiff in an action to maintain and defend the fund against wrongful attack or injury, tending to impair its safety or amount. Neither the cestuis que trustent nor beneficiaries can maintain such action against a third person, except in case the trustees refuse to perform their duty, and then the trustees should be made parties defendant."

This case is recognized as authority in Stevens v. Bank, 144 N. Y. 61, 39 N. E. 68. The counterclaim must, therefore, be dismissed.

Judgment is ordered for the plaintiff against the defendants severally for the amount of the bond, with costs.