(15 App. Div. 173.)

ULSTER COUNTY SAV. INST. v. OSTRANDER et al.

(Supreme Court, Appellate Division, Third Department. March 8, 1897.)

BONDS—LIABILITY OF SURETY—BANK OFFICER.

    A surety for faithful discharge of duty, "during his continuance in office," by
a bank treasurer elected "for the ensuing year," is not liable for defalcations
committed during another term, to which the treasurer was elected at the ex-
piration of the year, though a by-law of the bank provided that its treasurer
should hold office at the pleasure of the trustees, and the surety was a trustee.
Merwin and Herrick, JJ., dissenting.

Appeal from circuit court, Ulster county.

Action by the Ulster County Savings Institution against James E.
Ostrander and Augustus H. Bruyn. From a judgment entered on an·
order of the trial judge, dismissing the complaint, plaintiff appeals.
Affirmed.

The facts are stated by Mr. Justice MERWIN as follows:

    This action is upon a bond, dated July 16, 1867, executed and delivered by the de-·
fendants, James E. Ostrander and Augustus H. Bruyn, and one Jansen Has--

brouck, now deceased, to the plaintiff, in the penal sum of $25,000. After the formal part, the recital and condition are as follows: "Whereas, the above-bounden James E. Ostrander has been chosen and appointed treasurer of the Ulster County Savings Institution, by reason whereof divers sums of money, goods and chattels, and other things, the property of the said institution, will come into his hands: Now, therefore, the consideration of the above obligation is such that if the said James E. Ostrander, his executors or administrators, at the expiration of his said office, upon request to him or them made, shall make or give unto the said institution, or their agent or attorney, a just and true account of all such sum or sums of money, goods and chattels, and other things, as have come into his hands, charge, or possession as treasurer aforesaid, and shall and do pay and deliver over to his successor in office, or any other person duly authorized to receive the same, all such balances or sums of money, goods and chattels, and other things, which shall appear to be in his hands and due by him to the said institution, and if the said James E. Ostrander shall well and truly, honestly and faithfully, in all things, serve the said institution in the capacity of treasurer as aforesaid, during his continuance in office, then the above obligation to be void; else to remain in full force and virtue." The plaintiff was incorporated in 1852. By the charter it was provided that the business of the corporation should be managed by the board of trustees, who should elect from their number a president, a vice president, and such other officers as they may see fit; that the board of trustees should have power from time to time to make such by-laws, rules, and regulations as they should judge proper for the election of their officers, for prescribing their functions and the mode of discharging the same, and generally for transacting, managing, and directing the affairs of the corporation; that the board of trustees might appoint such subordinate officers and agents as they might deem necessary, who should respectively give such security for their fidelity and good conduct as the board might from time to time require, and should fix the salaries of such officers and agents. By-laws were adopted in 1858, which were in force in and after 1867. By article 2 it was provided that the election of officers specified in the charter should take place annually at the regular meeting in July. Article 5 is as follows: "The trustees shall elect one of their number as secretary, and shall also elect a treasurer, and such other officers and assistants as they may deem necessary to be employed in the institution, which appointments shall be held at the pleasure of the board. They shall also annually appoint a standing committee of three, to be called an 'executive committee,' and a standing committee of three, to be called a 'finance committee,' and, semiannually, a committee of three, to be called an 'examining committee.'" By article 10 it was provided that "the treasurer shall execute a bond, with good and sufficient sureties, to be approved by the president and one of the vice presidents, in the penal sum of twenty-five thousand dollars, conditioned for the faithful performance of his trust, and shall renew the same from time to time, whenever required by them so to do." By article 13 it was made the duty of the executive committee to attend to the general management of the office, and superintend the treasurer in the performance of his duties. By article 28 it was provided that the trustees might at any time make alterations in the by-laws, provided the alteration be submitted to the board at least one meeting before the same is passed upon. Prior to April, 1867, E. W. Budington had been treasurer of the institution. He resigned, and at a meeting of the board of trustees April 16, 1867, the following occurred, as shown by the book of minutes of the institution: "Resignation of E. W. Budington accepted. On motion, resolved, that the salary of the treasurer be $1,500. The board then proceeded to ballot for treasurer, and James E. Ostrander was declared elected. On motion, resolved, that the treasurer give bonds in the sum of $25,000." The proceedings of the board of trustees on July 16, 1867, were as follows: "Regular annual meeting of the trustees held July 16, 1867. On motion, the following were elected officers for the ensuing year: President, Archibald Russell; vice president, A. H. Bruyn; ·secretary, Caleb S. Clay; treasurer, James E. Ostrander; assistant treasurer, M. T. Trumpbour." At the annual meeting of the board on July 21, 1868, the following occurred: "Minutes read and approved. On motion, the following were elected officers for the year: President, Archibald Russell; vice president, A. H. Bruyn; secretary, C. S. Clay; treasurer, James E. Ostrander; assistant treasurer, M. T. Trumpbour." On July 20, 1869, the same officers were elected "for the ensuing year." After 1869 there was no election of treasurer at the annual meetings up to and including 1891. Ostrander continued to perform the duties of the office until 1891, when a large de-

falcation upon his part was discovered, no part of which occurred prior to 1871. The claim of the plaintiff is that this occurred at divers times between 1873 and 1887. In April, 1867, the defendant Bruyn was a trustee of the plaintiff, and vice president of the board, and so continued until 1877, when he became president, and so continued to 1891. He was also executive committee from 1867 to 1869. He did not at any time demand from Ostrander any other bond than that which was given in the first instance, and did not ask him to renew it. It was conceded on the argument that no other bond was ever given. Hasbrouck, the other surety, was a trustee in 1867, and was president from 1870 to 1877. The defendants claimed, among other things, that the bond was good only for a year from its date, and that, as there was no defalcation within that period, the defendants were not liable, and the trial court so held.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

J. Newton Fiero and Severyn B. Sharpe, for appellant.
Charles F. Cantine and Howard Chipp, for respondents.

PUTNAM, J.   The defendant Ostrander on July 16, 1867, was elected treasurer of the Ulster County Savings Institution for the ensuing year, and, with the defendant Bruyn, on that day executed the bond on which this action was brought, which contains the recitals set out in the opinion of MERWIN, J.   At the annual meeting of the trustees of the Ulster County Savings Institution held July 21, 1868, the defendant Ostrander was re-elected for the year, and on July 20, 1869, he was again re-elected for the ensuing year.   It is a well-settled principle that the liability of a surety is limited to the express terms of a contract.   His obligation, so far as warranted by the terms employed, should be construed strictly, and favorably to him.   Ward v. Stahl, 81 N. Y. 406.   I think, therefore, that the defendant Bruyn was only liable on the bond in question during the year for which Ostrander was elected when the instrument was executed.   I am unable to see why the principle established in Insurance Co. v. Clark, 33 Barb. 196; Overacre v. Garrett, 5 Lans. 156; Hassell v. Long, 2 Maule & S. 363;  U. S. v. Kirkpatrick, 9 Wheat. 720;  Waterworks Co. v. Atkinson, 6 East, 507;  Leadley v. Evans, 2 Bing. 469;  Lord Arlington v. Merricke, 2 Saund. 411; and many other cases that might be referred to,—does not apply.   The liability of the defendant as a surety is not in any manner affected by the existence of a by-law of the Ulster County Savings Institution that the treasurer shall hold office during the pleasure of the board of trustees.   In this case the pleasure of the board as to the term of office of the treasurer was signified when he was elected.   He was elected for the ensuing year, and at the end of that period he was re-elected. The effect of the action of the trustees who made the by-law in question, in electing the treasurer for one year, prevented such by-law from affecting his term of office.

I think the case was properly disposed of below, and that the judgment should be affirmed.

PARKER, P. J., and LANDON, J., concur.

MERWIN, J. (dissenting).   In the bond, after a recital that Ostrander "has been chosen and appointed treasurer," it is then conditioned

that Ostrander, "at the expiration of his said office," shall pay and deliver over "to his successor in office, or any other person duly authorized to receive the same," all moneys or property due from him, and shall faithfully, in all things, serve the institution "in the capacity of treasurer as aforesaid during his continuance in office." The term of office or the time of service is not fixed. The contention of the defendants is that the election in July, 1867, "for the ensuing year," limits the term of office or time of employment which was intended to be covered by the bond. The contention of the plaintiff is that, as by the charter or by-laws no term is fixed for the office, the phrase in the bond, "during his continuance in office," was intended to cover the entire period he should in fact occupy the position. It is to be observed that in the election or appointment on April 16, 1867, there is no limit of time. The salary of the officer was also then fixed, and a resolution was adopted that the officer give bonds in the sum of $25,000. The matter of salary or bonds does not appear in any of the subsequent proceedings of the board. "In an action against sureties upon a bond given by an agent for the faithful performance of his duties, the surrounding circumstances and the situation of the parties at the time of its execution may be considered in construing its terms, in case of ambiguity therein." Insurance Co. v. Clinton, 66 N. Y. 326. The contract may be interpreted in the light of the surrounding facts as they existed at the time of its execution. Griffiths v. Hardenbergh, 41 N. Y. 469; Zimmer v. Settle, 124 N. Y. 37, 42, 26 N. E. 341. The question is, what was the intention of the parties? Brandt, Sur. § 92; Crist v. Burlingame, 62 Barb. 351; Association v. Conkling, 90 N. Y. 121. The office in this case was not, by statute or by-law, an annual one; and therefore the case of Insurance Co. v. Clark, 33 Barb. 196, is not applicable. In that case the secretary was, by the by-laws, made to hold his office for one year, and until another was appointed in his stead. The bond given by him was, in terms, for the faithful performance of the duties of the office "during his continuance in office by virtue of his appointment." At the end of the first year, and of each year thereafter for several years, he was elected, without any new bond being given or required. It was held that the bond did not cover defaults after the first year. The re-election was deemed a new appointment, and not the appointment covered by the bond. In Welch v. Seymour, 28 Conn. 387, the office was, by the constitution of the corporation, an annual one, and therefore it was held that the obligation of the bond given upon the first appointment did not extend beyond the first year. In Bank v. Root, 2 Metc. (Mass.) 522, under a statute which provided that a cashier should retain his place until removed therefrom, or another should be appointed in his stead, a cashier was appointed in 1831, and gave bond for the faithful discharge of the duties of his office. In 1832 he was reappointed but gave no new bond. In 1836 and 1837 he was guilty of defaults, and the bond was sued. It was held that the sureties were liable, although it appeared from the records of the directors that in 1831 and in 1832 he was appointed "for the year ensuing." It was said that the parties, when the bond was made, acted in con-

templation of the law that made the office a continuing one; "that such an election is considered by the directors themselves as the continuance of an existing office, and not the commencement of a new one, is manifest from the fact that they require no new bonds." See, also, Brandt, Sur. § 172. . In Bank v. Chickering, 3 Pick. 335, it was held that annual re-elections of a cashier for several years did not make the office an annual one, it not appearing to be such, either in the bond given by the cashier, or in the charter, records, or regulations of the bank, and, therefore, that the bond given by the cashier, upon his first election, for the faithful performance of his duties, covered default made by him several years after his last election.    A similar view was taken in Elam v. Bank, 86 Va. 92, 9 S. E. 498.    In that case, the cashier of the bank having resigned in April, 1873, Elam, the plaintiff in error, was elected in his place, and on the 10th July, 1873, gave, with sureties, the bond on which the suit was brought.    It was broad enough in its terms to cover a continuing liability.    From that time to the suspension of the bank, in August, 1883, Elam continued to hold the office of cashier, being annually re-elected, although he did not give any new bond.    During all this period his sureties were directors.    By the statute applicable, the cashier held his office during the pleasure of the board.    It was held that the bond was not limited by the re-elections, but was a continuing obligation, and it was said:

"And it seems patent, unless we are to charge these sureties, who were also directors, with a gross violation of duty, in not demanding a new bond, that they must have construed the bond as continuing."    See Stevens v. Orton, 18 Misc. Rep. 538, 43 N. Y. Supp. 792.

The question comes down to this:    Did the parties intend to limit the operation of the bond "to the ensuing year."    Upon this subject the force of the action of the board, as entered in July, 1867, is to be considered in the light of their action in April, 1867, and in view of the existence of the by-law that made the appointment to the office to exist at the pleasure of the board.    No intent is manifest to change the by-law, and the board, under its rules, had no right to summarily change it.    The by-law was the law of the corporation (1 Thomp. Corp. § 935); and therefore it may be said, within the rule of the Amherst Bank Case, that there was no intention to make the office an annual one.    The bond, though of the same date as the meeting in July, does not, in terms, refer to it.    The circumstance that at the end of the first year no new bond was required was deemed an important one in the Amherst Bank Case.    We have that circumstance here, and also the fact, as in the Elam Case, that the sureties were themselves trustees; and the one here defending was vice president, and one of the executive officers, of the corporation.    Assuming he did his duty, there was a practical construction of the effect of the bond, that in this connection may be considered.    Woolsey v. Funke, 121 N. Y. 92, 24 N. E. 191.    It may be that he is not estopped from claiming that the bond was only for a year, but his action or failure to act on the subject of a renewal is of some significance in determining the question of what was the intention of the parties when the bond was given.    Placing ourselves in the posi-

tion of the parties when the bond was given, can it be fairly said that it was the intention to limit its operation to the year ensuing? Was it not rather the intention, in making the bond itself unlimited, to make it operative as long as Ostrander, at the pleasure of the board, according to its rules, continued to perform the duties of treasurer? In view of the general appointment in April, 1867, and the resolutions adopted, fixing the salary and the amount of the bond, followed by the general statements in the bond itself, and the subsequent acts of the parties, I am of the opinion that in the use of the words "for the ensuing year" in the proceedings in July, 1867, there was not any intention to override the by-law, but to continue an appointment already made subject to the by-law. The bond was either given in pursuance of the resolution of April, 1867, or of the by-law which required a bond. If given in pursuance of the resolution, it would naturally refer to the appointment of that date, which was a general one. If given in pursuance of the by-law on the subject, it would naturally refer to such an office as the by-laws created. There was not, I think, any intention to restrict the bond to a year, and therefore it was, as its terms import, a continuing one, and would cover the default in question. It follows that the judgment should be reversed.

HERRICK, J., concurs.