WAPELLO STATE SAVINGS BANK v. WILL H. COLTON, ET AL.

| 133 | 147 |
| 143 | 361 |

Banks and banking: , RE-APPOINTMENT OF OFFICIAL: LIABILITY OF SURETY. The appointment of a bank cashier for an indefinite term and at the pleasure of the directors is terminated by his new appointment for a definite period although there was no interruption in the service; and the sureties on his official bond under the original appointment are not liable for his defalcations occurring during the new term, in the absence of language in the bond itself giving it effect beyond such change in the term of appointment.

*Appeal from Louisa District Court.*— HON. W. S. WITHROW, Judge.

TUESDAY, FEBRUARY 5, 1907.

ACTION to recover from defendant W. H. Colton, and the other defendants as sureties on his bond, the sum of $25,300 received by said Colton as the cashier of the plaintiff bank, and by him wrongfully appropriated to his own use, and not accounted for. By motion, defendants raised the question as to the liability of the sureties for misappropriation of funds by the defendant Colton, after the date of certain action of the board of trustees of the plaintiff bank, in reappointing said Colton as cashier, and the trial court,

sustaining the contention of the sureties, held that the sureties were not liable for the defalcations of the defendant cashier after such alleged reappointment and the expiration of the term therein provided for. From the ruling on this motion, the plaintiff appeals.— *Affirmed.*

*C. L. Poor* and *H. O. Weaver,* for appellant.

*Arthur Springer* and *C. A. Carpenter,* for appellees.

McCLAIN, J.— The facts as set out in the petition to which defendants' motion was directed are that defendant Colton was, by plaintiff's board of trustees, elected cashier of plaintiff bank on August 9, 1892, at a salary of $1,000 a year, his bond being fixed at $50,000. The required bond with codefendants as sureties was executed on the 16th of the same month, and was approved by the board of trustees on the 5th of September following. Colton was cashier of the plaintiff bank continuously from the time of his appointment until the 26th day of November, 1904, but, in the meantime, action with reference to his continuance in that employment had been taken by plaintiff's board of trustees as follows: On January 2, 1894, his salary for six months ending June 30th of the same year was fixed at $450, and on July 3d of that year it was agreed that his salary for the previous six months be continued at the same rate for the six months succeeding; on January 7, 1896, " The matter of passing upon the selection of a cashier was deferred by the said trustees two weeks," and on January 21, 1896, " the election of a cashier " was postponed " until the regular meeting in April next, on condition that the present cashier and E. G. Heins elect to remain until that time at the rate of $900 a year, to be divided between them." On April 7, 1896, at a meeting of the board of trustees, defendant Colton was " employed as cashier for the remainder of the year at a salary of $60 per month," and on January 6, 1897, it was voted that de-

fendant Colton " and E. G. Heins be employed for the next year as cashier and clerk respectively, for the total sum of $1,200, to be divided between them." The holding of the court now appealed from was that defendant Colton's employment as cashier covered by the bond executed at the time of his original employment was fully terminated and determined prior to January 1, 1898.

Under the statute in force with reference to the organization of savings banks at the time defendant Colton was originally appointed, the plaintiff's board of trustees had authority to appoint a cashier to hold office " during the pleasure of the board," and by one of the articles of incorporation of plaintiff bank, the cashier was to be so appointed; and had the board of trustees taken no subsequent action with reference to the appointment of a cashier, the bond originally given would have covered Colton's term of service until November, 1904. But we have recently held that the statute above referred to does not prevent the appointment for a specified period, and that a bond given in connection with the appointment for such a specified period does not cover the acts of the cashier after such term of service has expired. *Ida County Savings Bank v. Seidensticker,* 128 Iowa, 54. The question now presented is whether, after a general appointment to hold the office at pleasure, the governing board may make a new appointment of the same person as cashier for a definite period which shall limit the liability of the sureties on his original bond, although he, as a matter of fact, continues without interruption to occupy the position of cashier under the new arrangement and subsequent arrangements of the same character.

But we are first met by the contention that the record does not show any attempt on the part of plaintiff's board to make a new appointment, the claim of the appellant's counsel being that the records of the board are to be interpreted simply as recognizing the continuation of the original appointment, with new provisions as to compensation. We

cannot, however, give to the records already set out such an interpretation. The action of the board on January 2, 1894, and again on July 3d of the same year can properly be interpreted as applying only to the question of Colton's salary, without reference to the termination or the continuance of his employment. But the record of the action of the board on January 7, 1896, cannot be fairly construed as relating to the matter of salary, and the action on January 21st of the same year, simply further postponed the definite election of a cashier, with the arrangement that Colton continue for the time being under his original appointment, and in April following the action of the board was definite as to the employment of Colton for a specified period, and not merely with reference to his salary. Again on January 6, 1897, Colton was definitely employed for one year, the amount of his salary during that year being specifically provided for. We can reach no other conclusion, therefore, than that the board, having the authority to convert Colton's term from one at the pleasure of the board to one for a specified period, deliberately proceeded to do so, and to convert his tenure from one for an indefinite period to one for a definite period, and if this action of the board, as a matter of law, relieved the sureties from their liability under the bond given when Colton was first appointed for an indefinite period, then there was no error in the ruling of the court so far as it is now before us for review. On the question of law thus presented, we think there can be no reasonable doubt under the authorities.

We are not called upon at this time to decide, and we do not decide, that the action of the board in April, 1896, fixed a new term for Colton. Appellant cites cases which seem to support the proposition that, after an appointment for an indefinite period, the mere re-election for an indefinite period does not fix a new period of tenure so as to terminate liability under a bond given in connection with the original indefinite appointment. *Dedham Bank v. Chickering,* 3

Pick. (Mass.) 335; *Shackamaxon Bank v. Yard,* 143 Pa. St. 129 (22 Atl. 908, 24 Am. St. Rep. 521); *Stevens v. Orton,* 43 N. Y. Supp. 792. We do hold that the board, having authority to appoint for an indefinite period, may appoint for a definite period, and even after an indefinite appointment may exercise its authority to fix a definite period beyond which the original appointment shall have no effect, and the obligation of the bond given in connection with such indefinite appointment cannot extend, in the absence of any language in the bond itself giving it effect, beyond such change in the term of appointment. Whatever construction may be placed on the action of the board in April, 1896, as to whether it fixed a definite term in substitution for the previous indefinite term, there can be no doubt as to the construction which should be given to the action of the board in January, 1897, when Colton was employed for the next year as cashier. By the terms of that appointment, he entered upon a new term, with a fixed limitation of time, and beyond the limitation of that appointment the original bond could be of no force and effect, and this was the holding of the trial court. In support of this conclusion, see the following authorities: *Ulster County Savings Inst. v. Ostrander,* 163 N. Y. 430 (57 N. E. 627); *Amicable Mutual Life Ins. Co. v. Sedgwick,* 110 Mass. 163; *Rapier v. Louisiana, etc., Ins. Co.* 57 Ala. 100; *Mobile & M. R. Co. v. Brewer,* 76 Ala. 135; *United States v. West,* 8 App. (D. C.) 59; *Bonney v. Robertson,* 6 Colo. App. 485 (41 Pac. 842); *Commonwealth v. Fairfax,* 4 Hen. & M. (Va.) 208; *Citizens' Loan Ass'n v. Nugent,* 40 N. J. Law, 215 (29 Am. Rep. 230); *Savings Bank v. Hunt,* 72 Mo. 597 (37 Am. Rep. 449); *Hubert v. Mendheim,* 64 Cal. 213 (30 Pac. 633). None of the cases above referred to as cited for appellant are inconsistent with this position; on the other hand, the language used in the opinions lends support to this view, for they are expressly decided on the theory of an indefinite reappointment, which is construed as a mere continuance of

the original indefinite appointment through failure of the governing board to indicate an intention to terminate at its pleasure the previous appointment. It would not do to say that a new appointment for a definite term, no vacancy having occurred, is simply a continuation of the previous indefinite term. The existence of a vacancy is not essential to the authority of the governing board to change the terms and conditions of the service of an officer, already holding office which the board has authority to fill at its pleasure. If affirmative action was necessary to terminate the previous indefinite employment, it was taken when the board saw fit, in January, 1897, to appoint Colton for a fixed term.

The ruling of the trial court is therefore *affirmed*.