### WEBSTER v. JOSSMAN.

1. OFFICERS—BONDS—PRINCIPAL AND SURETY.

While, as a general rule, where a public officer is elected or appointed for a definite term and gives a bond in which the liability of the sureties is couched in general terms, the liability of the sureties is coextensive with the term, and ceases upon the beginning of another term by the same person, yet, liability may be extended a reasonable time after the date fixed for expiration, if the term fixed has connected with it the words "or until his successor shall be elected and qualified" or words of similar import, and in such circumstances the liability on the bond will continue for a reasonable time for the election and qualification of the successor.

2. SAME—CONTRACTS.

Bonds are contracts between the parties.

3. SAME—BONDS—LIABILITY FOR SUCCESSIVE TERMS.

Where sureties on an official bond engage by the language of the bond to become liable for any future term. the principal may be elected or appointed for they may be held liable upon their contract.

4. SAME—LIMITED LIABILITY.

Where, by the terms of an official bond, the sureties' liability is limited to only a portion of the term, such limitation will be recognized.

5. SAME—CONSTRUCTION OF BOND—PRINCIPAL AND SURETY.

Where the term of office, whether public or corporate, is for an indefinite period, or during the pleasure of the appointing power, and the obligation of the surety is couched in general language, the surety contracts for the indefinite term or during the pleasure of the appointing power, and he contracts for no less.[1]

6. BANKS AND BANKING—CASHIER—TERM OF OFFICE.

Under 3 How. Stat. (2d Ed.) § 6399, 2 Comp. Laws 1915, § 7970, giving bank directors power to appoint a cashier and dismiss him at pleasure, the cashier serves at the pleasure of the board, regardless of the fact that the bank directors are chosen annually.

7. SAME—ULTRA VIRES—STATUTES.

A by-law of a savings bank fixing the term of the cashier as one year is *ultra vires* and void under 3 How. Stat. (2d Ed.) § 6399, 2 Comp. Laws 1915, § 7970, making his term of service subject to the pleasure of the board of directors.

8. SAME—POWERS.

A savings bank is a creature of the statute, and has the powers expressly granted to it, and such as are fairly incidental thereto.

Error to Oakland; Smith, J. Submitted October 11, 1917. (Docket No. 83.) Decided December 27, 1917.

Assumpsit by Elmer R. Webster, receiver of the E. Jossman State Bank, against Ralph E. Jossman, principal, and Harrison Walter and Joseph A. Jossman, sureties, on a statutory bond. Judgment for plaintiff on a directed verdict. Defendants bring error. Affirmed.

*Patterson & Patterson (H. Geer,* of counsel), for appellants.

*Charles P. Webster,* for appellee.

---

[1] On liability of surety under fidelity bond for defalcations subsequent to a reappointment of the officer or employee, made before expiration of the original term, or during an indefinite term, see note in 11 L. R. A. (N. S.) 493.

On November 18, 1902, the E. Jossman State Bank was organized under the banking laws of this State at Clarkston, in Oakland county. On this day its first board of directors held its first meeting, and the following official action was taken:

"Ralph E. Jossman was elected cashier at a salary of $600 a year. Motion made, supported, and carried that the cashier be required to furnish a bond of $10,-000 to be approved by the directors."

The defendant Harrison Walter was elected the bank's first president, and defendant Joseph A. Jossman was one of its first board of directors. They were both present at this meeting. The attorney having the matter of the organization of the bank in charge was also present. Pursuant to the foregoing action, he prepared the bond, and it was there executed by the three defendants. The bond is as follows:

"Know all men by these presents that we, Ralph E. Jossman, of Clarkston, Michigan, as principal, and Joseph A. Jossman, of Oxford, Michigan, and H. Walter, of Clarkston, Michigan, as sureties, are holden and bound unto the E. Jossman State Bank, a corporation duly established under the laws of the State of Michigan, in the sum of ten thousand ($10,000.00) dollars, to the payment of which to the said corporation, its successors or assigns, we hereby jointly and severally bind ourselves, our heirs, executors, and administrators.

"Whereas the above-named corporation has agreed to take the above-bounden Ralph E. Jossman into its employ as cashier, upon the said Ralph E. Jossman and the above-bounden Joseph A. Jossman and H. Walter entering into a bond in the above-mentioned sum of ten thousand dollars ($10,000), with such condition as is hereunder written, for the faithful discharge by the said Ralph E. Jossman of his duties of cashier: Now, the condition of the above-written bond is such that, if the said Ralph E. Jossman shall faithfully discharge his duties as such cashier as aforesaid, or if the said Ralph E. Jossman and Joseph A. Jossman and H. Walter, or either of them, their or

either of their heirs, executors, or administrators, shall at all times hereafter keep indemnified the said corporation and its assigns against all losses, costs, damages, and expenses which the said corporation or its assigns may pay, sustain, or be put unto by reason of its taking the said Ralph E. Jossman into its employ or by reason of any act, embezzlement, mismanagement, neglect, or default of or by the said Ralph E. Jossman whilst in the employ of the said corporation or otherwise, then, in either of the said cases, the above-written bond shall be void; otherwise the same shall remain in full force.

"In witness whereof we, the said Ralph E. Jossman, Joseph A. Jossman, and H. Walter, have hereunto set our hands and seals this 18th day of November, 1902.

> "RALPH E. JOSSMAN.    [L. S.]
> "J. A. JOSSMAN.       [L. S.]
> "H. WALTER.         [L. S.]

"Signed, sealed, and delivered in presence of LEROY N. BROWN."

At the annual meetings of the board of directors beginning in 1903 and ending in 1913, with the possible exception of 1907, official action was taken by the board which, if the office of cashier is an annual one, re-elected Ralph E. Jossman cashier. The language of the record of these meetings differs in the different years. On occasion it shows that he "was elected cashier for one year"; that he "be cashier for the ensuing year"; that he "was hired for the ensuing year"; that he "be retained for one year"; and similar expressions were used, the effect of which, as we have stated, annually elected him for the ensuing year, if the office be construed to be an annual one. The board proceeded upon the theory that the office is an annual one, and the action taken by it annually was sufficient to effectuate this view. No other bond was ever filed or required of the cashier. In 1903 a set of by-laws was prepared and adopted by the board, section 11 of which, so far as important here, reads as follows:

"Sec. 11. The cashier shall be appointed by the board of directors and continue his employment in service for the current year (unless he shall resign or for some good cause be removed)."    *    *    *

From the organization of the bank down to August 27, 1913, Ralph E. Jossman continued as cashier. On this date the bank was closed by the State banking department, and later the plaintiff was appointed receiver. This action was taken by the department due to the insolvency of the bank through the defalcations of the cashier, which commenced in 1905, and are said to amount to over $100,000. That they exceed the amount of this bond is beyond doubt. This action, brought on the bond, resulted in a judgment for the amount of its penalty, and defendants sue out this writ of error.

FELLOWS, J. (*after stating the facts*). There are many assignments of error, but counsel for the appellants have very properly confined their discussion in the briefs and upon the oral argument to the controlling questions, as the case in the court below resolved itself finally into questions of law, pure and simple.

On behalf of appellants it is insisted that the bond is not a continuing one; that the office of cashier was an annual one, and was so made in the by-laws, and that the enactment of such by-laws was within the power of the corporation; that the cashier was elected annually, and the bond only covered an annual period, and ended when the cashier was elected for a new term, and, inasmuch as the defalcations of the cashier did not commence until 1905, they may not be held.

On the other hand, counsel for the receiver insists that this is a continuing bond; that the office of cashier is not an annual office, but by the statute his term is at the pleasure of the board; that, his term being

so fixed by the statute, it was inadmissible for the board to enact a by-law in conflict with the statute; that when the cashier was first selected it was for an indefinite term, and that his bond is so conditioned as to render the sureties liable for such indefinite term; and that in any event the subsequent adoption of the by-laws did not change the liability of the sureties theretofore undertaken.

The specific questions here involved have not been settled by the former adjudications of this court. *Stadler* v. *City of Detroit,* 13 Mich. 346, and *Dunphy* v. *Whipple,* 25 Mich. 10, cited to us, are not decisive. In the first of these cases the salary of the city marshal of the city of Detroit was involved, and the question for decision was the length of term of that office. In the second case the action was on the bond of the sheriff of St. Clair county, conditioned for the faithful performance of his duties as such during his continuance in office by virtue of his election for a term of two years. Under a statute then in force (section 415, 1 Comp. Laws. 1857) he was required to renew his bond within 20 days after the first of January in each succeeding year. This he failed to do, but continued to act *de facto,* and his sureties were held liable. The bond was broad enough to cover the entire term.

The case of *Lord Arlington* v. *Merricke,* 2 Saunders Rep. 411a, was an action brought by the postmaster general upon the bond of one Thomas Jenkins, who had been appointed a deputy postmaster on April 30, 1667, for a term of six months, and had given the bond upon which the action was brought. The bond contained a recital of the term of the appointment, and its terms of liability were very broad. The breach was alleged to have been committed September 22, 1669, nearly two years after the term had expired, although Jenkins had continued as a deputy postmas-

ter. It was held that the surety was not liable, and that the recitals in the bond of the term of the appointment limited the general language of the bond to that period, and, as the breach did not occur during the term of the appointment, there was no liability. From the time of this decision in 1671, and frequently citing it as authority, the general trend of decision has been that, where a public officer is elected or appointed for a definite term, and gives a bond in which the liability of the sureties is couched in general terms, the liability of the sureties is co-extensive with the term, and ceases upon the beginning of another term by the same person. Among the many cases upon this question see *Peppin* v. *Cooper*, 2 Barn. & Ald. 431; *Mayor, etc., of Cambridge* v. *Dennis*, El., Bl. & El. 660 (120 Eng. Rep. Full Reprint); *Hassell* v. *Long*, 2 M. & S. 363; *Thomas* v. *Summey*, 46 N. C. 554; *Banner* v. *McMurray*, 12 N. C. 219; *Hubert* v. *Mendheim*, 64 Cal. 213 (30 Pac. 633). We have stated the general tendency of decision. We are aware that it is not universal, but are satisfied that the great weight of authority is as stated. This general rule does not prevent liability being extended a reasonable time after the date fixed for expiration, if the term fixed has connected with it the words "or until his successor shall be elected and qualified," or words of similar purport. Under such circumstances the liability on the bond will continue a reasonable time for the election and qualification of the successor. *Chelmsford Co.* v. *Demarest*, 7 Gray (Mass.), 1; *Mutual Loan & Building Ass'n* v. *Price*, 16 Fla. 204 (26 Am. Rep. 703); *People's Building & Loan Ass'n* v. *Wroth*, 43 N. J. Law, 70; *O'Brien* v. *Murphy*, 175 Mass. 253 (56 N. E. 283, 78 Am. St. Rep. 487).

Nor does this put aside the rule that bonds are contracts between the parties, and that, if sureties engage by the language of the bond to become liable for

any future term the principal may be elected or appointed for, they will be held liable upon their contract. *People's Building & Loan Ass'n* v. *Wroth, supra; Shackamaxon Bank* v. *Yard,* 143 Pa. 129 (22 Atl. 908, 24 Am. St. Rep. 521) ; *Ulster County Savings Inst.* v. *Young,* 161 N. Y. 23 (55 N. E. 483). And where, by the terms of the bond their liability is limited to only a portion of the term, such limitation will be recognized.

With the growth of corporations and the necessity of electing officers for their management, the question of liability of sureties on the bonds of corporate officers has arisen, and the general trend has been to follow the authorities having to deal with official bonds, and to give the same effect to a term of a corporate officer as is given to a term of a public officer, and to limit liability of sureties correspondingly. *South Carolina Society* v. *Johnson,* 1 McCord (S. C.), 41 (10 Am. Dec. 644) ; *Kingston Mutual Ins. Co.* v. *Clark,* 33 Barb. (N. Y.) 196; *Citizens' Loan Ass'n* v. *Nugent,* 40 N. J. Law, 215 (29 Am. Rep. 230) ; *Fresno Enterprise Co.* v. *Allen,* 67 Cal. 505 (8 Pac. 59) ; *Ulster County Savings Inst.* v. *Ostrander,* 163 N. Y. 430 (57 N. E. 627) ; *First Nat. Bank* v. *Samuelson,* 82 Neb. 532 (118 N. W. 81) ; *Welch* v. *Seymour,* 28 Conn. 387.

The result of these cases will be found to be that, where the office, whether public or corporate, is held for a fixed term, and the obligation of the surety is couched in general language, or refers to the term, the surety contracts for such term, and he contracts for no more, excepting only where the term may be extended for the election or qualification of his successor a reasonable time, as we have shown; and, as a necessary corollary, it follows, and the cases so hold, that where the term is for an indefinite period, or during the pleasure of the appointing power, and the

obligation of the surety is couched in general language, the surety contracts for such indefinite term or during the pleasure of the appointing power, and he contracts for no less.

We now come to the crucial question in the case: "Did Jossman hold the office of cashier for an indefinite term or for an annual one?" This question requires for its answer the solution of two other questions, viz.:

(1) Was the office an annual one under the statute?
(2) Was it within the power of the corporation to make the term an annual one?

1. It is pointed out that the directors of a bank are elected annually, and it is urged that this fact should have force upon this branch of the case. Section 6407, 3 How. Stat. (2d Ed.), 2 Comp. Laws 1915, § 7979, provides, so far as important here, as follows:

"The affairs of each bank shall be managed by a board of not less than five directors, who shall be elected by the stockholders and hold office for one year, and until their successors are elected and have qualified." * * *

The provision of the law in force during the period covered by this transaction is found in section 6399, 3 How. Stat. (2d Ed.), 2 Comp. Laws 1915, § 7970, in the section defining the powers of the corporation. It reads as follows:

"Upon making and filing the articles of incorporation required by this act the bank shall become a body corporate, and as such shall have power: * * *

"*Fifth.* To elect or appoint directors, who shall choose from their members a president and one or more vice presidents, and shall have power to appoint and employ a cashier or treasurer, and other officers, define their duties, require bonds from such officers and clerks, dismiss such officers so elected or appointed, or any of them, at pleasure, and elect or appoint others to fill their places." * * *

It will therefore be seen that the cashier serves at the pleasure of the board. The fact that the appointing power was chosen annually does not change the situation. The cashier was chosen to serve the corporation, not the individuals who may, for the time being, hold the office of directors. *Louisiana State Bank v. Le Doux*, 3 La. Ann. 674, is directly in point. It was there said:

"The argument presented is mainly deduced from the provisions of the charter with regard to the election of directors. It provides that the directors of the bank shall be annually elected, and forbids the reelection of more than two-thirds of the directors in office at the time of each annual election, permitting no director to hold his office more than three years out of five in succession. But it does not follow from this legislation with regard to the board of directors that the mere clerks and servants of the corporation should hold their appointments by the same tenure. If these clerks and servants were to be considered the mere clerks and servants of the directors who appoint them, the conclusion might be a reasonable one. But we do not so regard them. They are the clerks and servants of the corporation; and the limited term of service of the directors does not control the duration of such appointments."

See, also, *Merchants' Bank of Ellis* v. *Honey*, 58 Kan. 603 (50 Pac. 871) ; *Union Bank of Maryland* v. *Ridgely*, 1 Har. & G. (Md.) 431, 432; *Anderson* v. *Longden*, 1 Wheat. (U. S.) 85.

2. The authorities directly in point upon this branch of the case are not so numerous as those upon the subjects heretofore discussed, and they are not harmonious. It must be patent to counsel that a résumé of all cases which the industry of counsel on both sides of the case has brought to our attention is out of the question. They have all been examined, those directly in point, and those which are thought by analogy should apply. We shall first consider those urged

by appellant's counsel to be especially in point upon this branch of the case. The supreme court of Iowa must be held to have sustained counsel's contention without reserve. *Ida County Savings Bank* v. *Seidensticker,* 128 Iowa, 54 (102 N. W. 821, 111 Am. St. Rep. 189, 5 Am. & Eng. Ann. Cas. 945), and *Wapello State Savings Bank* v. *Colton,* 133 Iowa, 147 (110 N. W. 450, 11 L. R. A. [N. S.] 493), are in point. An examination of the statutes of Iowa, with reference to the organization and management of savings banks (chapter 10, tit. 9, Code of Iowa 1897) does not disclose a wide divergence from the language found in our own act, although the provision in the Iowa act with reference to the election of a cashier is not found in the section defining the power of the corporation as it is in our act.

The facts in *First Nat. Bank of Brandon* v. *Briggs' Assignees,* 69 Vt. 12 (37 Atl. 231), are somewhat dissimilar from those in the instant case. There a by-law had been adopted providing that the cashier should hold at the pleasure of the board. The cashier, however, was elected "for the year ensuing," and under such election gave the bond sued upon. Here the cashier was originally elected for an indefinite period before any by-laws had been adopted. His bond was given to qualify him on that election. In that case there was no testimony of infraction of the rules by a long usage, and the court said:

"The case cannot be put on the ground that the corporation had, by long and uniform practice, made the office an annual one, notwithstanding the provision of its by-law. This bond was given at the cashier's first election, and the case does not show what the previous course of the corporation had been. But, irrespective of any previous action of a similar character, we think the liability of the surety is to be determined with reference to the appointment as made."

Should we follow this expression to its logical se-

quence, might we not say in the instant case that the liability of the bond sued upon had reference to such original appointment for an indefinite period? But we prefer not to give too narrow a construction. This case cannot be regarded as forceful for appellant's claim as are the Iowa cases.

When we read the section of the statutes of Missouri having reference to the officers of banks (section 3, p. 330, Wagner Rev. Stat. Mo.), it becomes readily apparent that the case of *Savings Bank of Hannibal* v. *Hunt*, 72 Mo. 597 (37 Am. Rep. 449), is clearly distinguishable from the instant case. The section of the Missouri statutes referred to reads as follows:

"3. The affairs and business of any such association shall be managed and controlled by a board of directors, not less than five nor more than thirteen in number, from whom there shall be designated by themselves a president, a cashier and a secretary, who shall hold their office for one year, and until their successors are duly elected and qualified."

It will therefore be seen that the term of the office of cashier was there fixed by the statute as an annual term, and the case is not authority on the question now under discussion.

The case most strongly relied upon by counsel for the receiver is *Westervelt* v. *Mohrenstecher*, 76 Fed. 118 (22 C. C. A. 93, 34 L. R. A. 477). It is urged that this case should control from the fact that the provision under consideration, found in our banking act, was taken literally from the National bank act (Rev. Stat. U. S. § 5136, p. 993 [U. S. Comp. Stat. 1916, § 9661]), and it is urged that we are bound by construction placed upon it by the Federal courts. But counsel overlooks the fact that the case in question was decided after our banking law was enacted and does not come from the court of last resort. The

case therefore is controlling only so far as its reasoning is persuasive. The case, however, is so like the instant case in its facts, and so cogent in its reasoning, that it is most persuasive. As we have stated, the provisions of the National bank act there under consideration were adopted in the section of our banking law above quoted. In that case, as here, by-laws had been adopted making the term of the cashier an annual one. The cashier there, as here, gave a bond upon his first appointment and gave no further bond. There, as here, the board of directors annually re-elected him cashier. It was there held that, the congress having fixed by the National bank act the term of the cashier as an indefinite one, subject to the pleasure of the board, it was beyond the power of the board to pass a by-law in conflict with the act of congress, and that the purported annual elections of the cashier were nullities, and the bond liable for defaults during the occupancy of the office by the principal. It was said:

"The act of congress under which this bank was organized provided that its board of directors might appoint a cashier, require bonds of him, and fix the penalty thereof, and dismiss him at pleasure, and appoint another to fill his place. Its articles of association provided that the board might appoint a cashier, fix his salary, and continue him in office, or dismiss him, as in the opinion of a majority of the board the interests of the association might require. It is plain that, in the absence of any other regulations, a cashier once appointed under this act of congress and these articles of association would hold his office until he resigned, or until the board of directors of the bank dismissed him. A subsequent appointment of the same man to the same office would have no more effect upon him, or upon the term of his office, than a second deed of the same property by one who had already conveyed it to the same grantee would have. The only act of the board of directors that could effect the tenure of his office, under the act of congress, would be his dis-

missal. It is, however, contended that the by-laws (which provided that the cashier should be elected at the annual meeting in January in each year, should give a bond in the sum of $10,000, and should hold his office for one year, and until his successor was elected and qualified) made this an annual office, and limited the term of the office of this cashier to the unexpired portion of the year for which his predecessor, Vieths, was elected. But how could the by-laws of this bank repeal or modify the act of congress and the articles of association under which they were enacted? The act of congress expressly fixed the tenure of office of the cashier of this bank. It expressly provided that the board of directors might dismiss the cashier and certain other officers 'or any of them at pleasure and appoint others to fill their places.' It provided that this cashier should always hold his office subject to instantaneous removal at the pleasure of the board of directors. * * * In our opinion, the provision of the act of congress to which we have referred was inserted *ex industria* to provide for this very contingency. In any event, it is there, and it clearly provides that the cashier of a National bank may be dismissed at the pleasure of the board of directors, and that it may appoint, not the same man again, but another in his place. National banks are the creatures of the act of congress. Under familiar principles, they have no powers beyond those expressly granted and those fairly incidental thereto. *The Omaha Bridge Cases,* 10 U. S. App. 98, 174 (2 C. C. A. 174, and 51 Fed. 309); *Union Pac. R. Co.* v. *Railway Co.,* 2 C. C. A. 174, 230 (51 Fed. 309, 316). It follows from this principle that, since the act of congress expressly provides that the cashiers of National banks should hold their offices subject to the pleasure of the board of directors, neither the bank nor its board can make time contracts or appointments in violation of that provision. *Harrington* v. *National Bank,* 1 Thomp. & C. [N. Y.] 361; Boone, Banking, § 353; Ball, National Banks, p. 65. What, then, is the effect of these established rules upon the by-laws of this bank? It is that that part of these by-laws which provides that the cashier shall hold his office for one year, and that he shall be elected annually, must fall, and the cashier

of the bank must hold his office under the act of congress, subject to immediate removal at the pleasure of the board of directors, until he resigns or is removed."

A much-cited case and one quite in point is *Amherst Bank* v. *Root*, 2 Metc. (Mass.) 522. In this case the cashier was elected "for the year ensuing" and gave the bond in suit. He was re-elected the succeeding year, but gave no new bond. The default in the bond occurred after the first year. The act of the legislature under which the bank was organized made the term indefinite. It was held that the act under which the cashier was elected controlled, Chief Justice Shaw saying:

"We think, therefore, that when Luther Root was elected cashier, in October, 1831, even if it was entered in the directors' minutes as an election for the year ensuing, it not being by law an annual office, he held it by force of the provision of the general law above stated, until another was chosen in his stead."

After discussing the matter somewhat, he concludes:

"But another and perhaps more satisfactory answer is that the directors are presumed to know the general law; that they consequently know, when they come into office, that the cashier, whom they find there, will by law continue in his office, unless they think fit to remove him. Their act is to be taken in connection with their presumed knowledge of the law in this respect. But it may be satisfactory to them, constituting in theory, and sometimes in fact, a new board of directors, and also satisfactory to the cashier, that they should express their will and intention upon the subject. Under such circumstances the election of the cashier to an office which he already holds, and would hold without election, must be regarded as a manifestation of their will and intent that he should continue to hold the office for another year, unless there should be cause afterwards to remove him. That such an election is considered by the directors themselves as the continuance of an existing office, and not the commencement of a new one, is manifest from the fact that they require no new bonds."

*Stevens* v. *Orton,* 18 Misc. Rep. 538 (43 N. Y. Supp. 792), is similar to the present case, except that the by-law there involved followed the Federal statute, the bank being a National bank. This is not important, because, if the bank had the power to fix the term by the enactment of a by-law, it would likewise have the power to fix the term by action taken at the time of the election. In that case the cashier was first elected without fixing his term, and he gave his bond upon such first appointment, as did the cashier in the instant case. Thereafter annually he was re-elected. At times the proceedings showed that he was elected for the ensuing year, and at times this was omitted. The same defense was there made as is here insisted upon; but the bond was held to be a continuing one, and the sureties liable for breaches of the bond occurring after the cashier's re-election.

The following cases will be found to sustain the plaintiff's contention, either because in point, or because by analogy they are persuasive: *Elam* v. *Commercial Bank,* 86 Va. 92 (9 S. E. 498) ; *Dedham Bank* v. *Chickering,* 3 Pick. (Mass.) 335; *Union Bank of Maryland* v. *Ridgely, supra; Commonwealth* v. *Reading Savings Bank,* 129 Mass. 73; *Coplin* v. *McCalley,* 1 Leigh (Va.), 308 (19 Am. Dec. 748) ; *Exeter Bank* v. *Rogers,* 7 N. H. 21; *Amicable Mut. Life Ins. Co.* v. *Sedgwick,* 110 Mass. 163; *Ulster County Savings Inst.* v. *Ostrander, supra; Louisiana State Bank* v. *Le Doux, supra.* We are persuaded that the weight of authority, in point and by analogy, is with the plaintiff.

Upon principle the contention of the plaintiff must prevail. A savings bank is a creature of the statute, and has the powers expressly granted to it, and such as are fairly incidental thereto. It has power to elect a cashier, and the term of such officer is fixed in the same section as the grant of power. It cannot be said

199—Mich.—8.

that it is an incident to such granted power to fix a different term than that fixed by the statute to pass a by-law in conflict with the act granting the power. Such action in conflict with the act granting the power cannot be said to be incidental to the power granted. The position of cashier is a most important one. His standing and reputation in the community is of vital importance to confidence in and success of the bank. A breath of suspicion, founded or unfounded, affects not only him, but the institution with which he is connected. The legislative wisdom has therefore made his tenure at the pleasure of the board. The legislature, and the legislature alone, can change that tenure. We therefore conclude that the by-law fixing the term of the cashier different than the provisions of the statute was *ultra vires* and void. The cashier held at the pleasure of the board. His bond was a continuing one, and the sureties are liable in this action.

The judgment is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.