[In Bank.— October 10, 1883.]

CHARLES HUBERT, APPELLANT, *v.* H. MENDHEIM, RESPONDENT.

OFFICER — DEPUTY — BOND. — Where a deputy appointed by a public officer gives a bond for the faithful performance of his duties under the appointment, the bond so given is an official bond within the meaning of the Political Code, though payable to the principal officer, and not to the State.

ID. — DEFECT IN FORM — WHO MAY SUE. — Such a bond is defective in form, but under the provisions of section 963 of the Political Code, the State, or any person interested, may sue upon it in the same manner as if the bond were in proper form, the defect being suggested in the complaint.

ID. — PLEADING — SUGGESTING DEFECT. — Attaching a copy of the bond to the complaint is a sufficient suggestion of the defect.

ID. — LIABILITY OF SURETIES — ALLEGING BREACH. — The sureties are only liable for the acts of the deputy during the term of the principal officer for which the appointment was made, and the fact that the breach occurred during such term must be alleged in the complaint.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The complaint contained three counts. It was alleged in the first count that the plaintiff was treasurer of the city and county of San Francisco, from the 6th day of December, 1875, continuously, and by successive elections in pursuance of law, until the date of the commencement of the action, September 24, 1879·; that in pursuance of law he appointed one William Cassebohm, chief deputy in his office, and required of him a bond in the sum of fifty thousand dollars; that on the 9th day of December, 1875, a bond was executed by Cassebohm as principal, and the defendant and others as sureties, in the sum of fifty thousand dollars, whereby after reciting that, "whereas, William Cassebohm has been appointed by Charles Hubert, treasurer elect, in and for the city and county of San Francisco, State of California, chief deputy in said office, and whereas, the said William Cassebohm is required to file a bond previous to entering upon the duties of chief deputy in said office, and whereas,‑ the amount of such bond has been fixed at fifty thousand ($50,000) dollars," it was conditioned that "if the above. bounden William Cassebohm shall well and truly, honestly and faithfully, perform and execute the duties of chief deputy in the office of treasurer of the city and county of San Francisco, as required by law, as well those which may be required of him by any law now existing as those which may be required of him by any law enacted subsequently to the execution of this bond, then this obligation to be void, otherwise to be and remain in full force and effect."

It was then averred that Cassebohm entered upon the duties of his office, and was chief deputy from December 9, 1875, until the day of his death, April 29, 1879, and that he fraudulently took and converted moneys from the treasury of the city and county. It is not alleged in either the first or the second count that the defalcation occurred during the two years succeeding December 6, 1875, which constituted the first term of office of the plaintiff.

The third count contained substantially the same averments as the first two, but charged the defalcation of Casse-

bohm as having occurred during the plaintiff's first term of office.

The defendant interposed a separate demurrer to each of the counts, and also a demurrer to the entire complaint.

The demurrer was sustained in the court below, and plaintiff having declined to amend, judgment went against him.

*J. P. Hoge*, for Appellant.

The objections made to the complaint are not properly raised by demurrer. They would arise on the assessment of damages according to the proofs at the trial. (*People* v. *Brush*, 6 Wend. 459; *Williams* v. *Maden*, 9 Wend. 240; *Amory* v. *Brodrick*, 5 Barn. & Ald. 712; *Duffield* v. *Scott*, 3 Durn. & E. 374.) The bond was a good common-law bond, voluntarily given, and binding upon the parties. (*Palmer* v. *Vance*, 13 Cal. 553; *United States* v. *Bradley*, 10 Peters, 357; *United States* v. *Tingey*, 5 Peters, 114; *Cotton's Guardian* v. *Wolff*, 14 Bush, 238; *Lane* v. *Kasey*, 1 Met. (Ky.) 410; *Smith* v. *Fargo*, 57 Cal. 157; *Turner* v. *Armstrong*, 9 Bradw. App. Ct. 24; *U. S.* v. *Linn*, 15 Peters, 290; *Pritchett et al.* v. *People*, 1 Gilm. 525; *Young* v. *State of Maryland*, 7 Gill & J. 259.) A deputy does not hold by terms. His responsibility and that of his sureties continues during all the time he holds his position under the appointment. (*Hughes* v. *Smith*, 5 Johns. 168; *Exeter Bank* v. *Rogers*, 7 N. H. 21; *Anderson* v. *Longden*, 1 Wheat. 85; *President etc. of Dedham Bank* v. *Chickering et al.* 3 Pick. 335; *Amherst Bank* v. *Root*, 2 Met. 522; *United States* v. *Truesdell*, 2 Bond C. C. Rep. 78; *Curling* v. *Chalkden*, 3 Maule & S. 502; *The Commissioners* v. *Greenwood*, 1 Desaus. Eq. 452; *Royster* v. *Leake*, 2 Munf. 280; *Jacobs* v. *Hill*, 2 Leigh, 393.) In any event the demurrer to the third count should be overruled.

*Cope & Boyd*, and *Lloyd & Wood*, for Respondent.

No breach of the bond is shown by the first two counts of the complaint. The bond was given to cover the current term of the principal officer at the date of its execution. There is nothing to show any intention that the sureties should be bound

for a longer period. (*Banner* v. *McMurray*, 1 Dev. 218; *Thomas* v. *Summey*, 1 Jones L. 554; *Munford* v. *Rice*, 6 Munf. 81; *Tyler* v. *Nelson*, 14 Gratt. 214; *Leadley* v. *Evans*, 9 Moore C. P. 102; *People* v. *Aikenhead*, 5 Cal. 106; *Brown* v. *Lattimore*, 17 Cal. 93; *Brewer* v. *King's Sureties*, 10 The Reporter, 724; *Mayor* v. *Crowell*, 11 Vroom, 207; *Citizens' Loan Association* v. *Nugent*, 11 Vroom, 215; *County of Wappell* v. *Bigham*, 10 Iowa, 42; *United States* v. *Eckford's Executors*, 1 How. 259.) The official personality of the principal officer was changed upon his succession to his second term. He entered upon the new term under conditions wholly distinct from the previous one.

The bond does not conform to the requirements of the Code, and is therefore void. The Political Code provides that an officer may require an official bond from a deputy. (Pol. Code, § 985.) The form of the bond is prescribed by other sections, and it is a material requirement that it be made payable to the State of California. It must operate not only as security to the State, but to all persons who may be injured by the wrongful act of the officer. (Pol. Code, §§ 958, 961.) The intention is that the bond shall be a cumulative security. The officer may exact a bond from his subordinate, or may not, at his discretion; but if he exacts a bond it must be one which is in form official, and which will protect the public as well as himself. This is not such a bond. It is made payable to the officer himself, and operates only in his favor. The bond was in violation of the official duty of the plaintiff, and therefore cannot be enforced. (Brandt on Suretyship, § 12; *Thompson* v. *Buckhannon*, 2 Marsh. J. J. 416; Civ. Code, §§ 1550, 1667.)

McKINSTRY, J. — The objection taken under the demurrer to the third cause of action as stated in the complaint is that the bond therein mentioned is not an *official* bond, and is therefore void; the objection to the first and second counts is that they do not allege moneys to have been misappropriated by *Cassebohm*, deputy, during the term for which he was appointed deputy — it being averred that plaintiff was treasurer for more than one term.

It is not necessary to decide that the bond is good as a com-

mon-law obligation. It is proper to observe, however, that it is by no means a corollary from the proposition that plaintiff might have been compelled, by *mandamus*, to require an official bond from his deputy, that a private obligation of defendant, which he chose for a consideration to assume, would be *void*. No principle of public policy would seem to prohibit an officer from requiring for his personal protection, security, beyond the official bond, which protects also the State and third persons.

1. We think the third count of the complaint contains a statement of a cause of action. The demurrer to the third count, as well as the general demurrer to the whole complaint, should have been overruled.

If the bond sued on is an *official* bond, the obligors are bound to the extent and to the persons that others are bound who execute official bonds. Nor, in presence of the averments of the complaint, at least, can the plaintiff add to the liability of the defendant by treating the instrument as a common-law bond.

The sections of the Political Code which bear upon the point presented, under the demurrer to the third count of the complaint, are as follows: —

"Section 958. All official bonds must be in form, joint and several, and made payable to the State of California in such penalty and with such conditions as required by this chapter, or the law creating and regulating the duties of the office.

"Section 959. Every official bond executed by any officer pursuant to law is in force and obligatory upon the principal and sureties therein, for any and all breaches of the conditions thereof committed during the time such officer continues to discharge any of the duties of, or hold the office, and whether such breaches are committed or suffered by the principal officer, his deputy, or clerk.

"Section 960. Every such bond is in force and obligatory upon the principal and sureties therein for the faithful discharge of all duties which may be required of such officer by any law enacted subsequently to the execution of such bond, and such condition must be expressed therein.

"Section 961. Every official bond executed by any officer pursuant to law is in force and obligatory upon the principal and sureties therein to and for the State of California, and to and

for the use and benefit of all persons who may be injured or aggrieved by the wrongful act or default of such officer in his official capacity; and any person so injured or aggrieved may bring suit on such bond, in his own name, without an assignment thereof.

"Section 962. No such bond is void on the first recovery of a judgment thereon; but suit may be afterwards brought from time to time, and judgment recovered thereon by the State of California, or by any person to whom a right of action has accrued against such officer and his sureties, until the whole penalty of the bond is exhausted.

"Section 963. Whenever an official bond does not contain the substantial matter or conditions required by law, or there are any defects in the approval or filing thereof, it is not void so as to discharge such officer and his sureties; but they are equitably bound to the State or party interested; and the State or such party may, by action in any court of competent jurisdiction, suggest the defect in the bond, approval, or filing, and recover the proper and equitable demand or damages from such officer and the persons who intended to become and were included as sureties in such bond.

"Section 985. Every officer or body appointing a deputy, clerk, or subordinate officer may require an official bond to be given by the person appointed, and may fix the amount thereof."

All the sections of the Political Code above recited, except section 985, are re-enactments of provisions of the Statute of 1850, which were in force when the decisions were made by the Supreme Court of the State — hereinafter cited — to the effect that where an officer is chosen for two successive terms, his bond given at the commencement of his first term only covers his conduct during such term.

The bond executed by *Cassebohm* is none the less an *official bond* because it is made payable to plaintiff and not to the State of California. (§ 963.) Every bond demanded of and given by a deputy for the faithful discharge of his duties (however in other respects it may fail to comply with the form directed by the Code), is an official bond. It may be sued as such by the State or any person interested, and the same damages recovered

as if there were no defects of form. (§ 963.) True, section 963 directs that the plaintiff shall "suggest the defect in the bond." But the bond, although it "does not contain the *substantial* matter or conditions required by law," is nevertheless an official bond. (§ 963.) Of course the words last quoted do not authorize the courts to change a writing entirely irrelevant into an official bond. The writing as to which the suggestion is to be made must be a *bond*, given by an officer or his deputy to secure the discharge of his duties. But being such it is an official bond. Any defect in *its form* must appear on the face of the instrument. The action provided for in section 963 is not a bill to reform the instrument so as to make it conform to the provisions of the Code. It is only necessary that the defect be suggested, and thereupon, if the breach is proved, the court is authorized to render a judgment, precisely as if the bond conformed in every respect to the statutory requirements.

Conceding, for the purpose of the argument, that the suggestion of the defect should be made in the *complaint*, the mere omission of a formal averment that the plaintiff " suggests " that the bond is defective in that it is not in terms made payable to the State of California, authorizes neither the plaintiff nor defendant, in the case at bar, to deny that the bond is an official bond. If the section of the Code requires a technical suggestion on the record with reference to the defect, for the purpose of calling the attention of the court to it, no particular form of words is necessary to accomplish that object. It is difficult to suppose that a sufficient complaint could be framed in an action brought for damages arising from the breach of the bond, which would not suggest its defects in form; since in every such action the bond should be set forth *in haec verba*, or its substantial parts averred, in their legal effect. However this may be, in the case at bar a copy of the bond is attached to the complaint. By the record the attention of the court was called to the fact that the bond sued on was an official bond, defective as to certain matters of form.

By thus suggesting the defect in form the plaintiff, a person injured by the default of *Cassebohm*, and authorized to bring suit upon his official bond, is estopped from claiming that the bond is not an official bond. On the other hand the defendant

cannot say the bond is unofficial, because he has executed an instrument which could be and has been, declared upon as an official bond, and which he must have known could be so declared upon when he executed it.

2. The bond being an official bond, do the first and second counts of the complaint, respectively, state a cause of action?

By section 4112 of the Political Code the treasurer is authorized to appoint as many deputies as he may deem necessary, but it would seem that provision has been made by law for the payment of salaries to but two deputies. (Act of 1869–70, p. 122.)

Section 878 of the Political Code refers to *deputies*, as well as to principal officers whose appointment is not elsewhere provided for. In section 876 deputies are called "subordinate officers." Section 878 reads:—

"Section 878. Every office of which the duration is not fixed by law is held at the pleasure of the appointing power."

The power of appointing deputies, however, is in the principal *officer*, and not in the *man*, and the official existence, past and present, of the principal officer must be regarded, during a term, as limited by the commencement and end of such term. The powers of the principal officer, including his power to appoint, must be regarded during a term, as in like manner limited. If the principal officer is chosen for a second term, he is not, during the second term, the appointing power which nominated deputies during the first term, any more than would another person if elected to the second term constitute the appointing power which had named the deputies of his predecessor in office. If the same man shall be elected for two successive terms, and shall retain into the second term a deputy appointed for the first—even without formal reappointment in writing or requiring of him a second bond—he, the officer, must be held to have reappointed the deputy, and may then indulge the pleasure of removing him, because, under section 878, the second appointment of the deputy, like the first, is at the pleasure of the appointing power.

The deputy of an executive officer is an assistant empowered by law to act in the name of the officer. He is appointed by the principal officer, but his authority is derived from the statute which permits his appointment. His functions are those of

the *officer* in whose stead he discharges them.   He is not the pri-
vate agent of the individual who holds the office.   So far as we
are informed, it has been the uniform practice, certainly it is
the duty, of the in-going officer, if he desires to continue any
deputy of his predecessor, to reappoint him.   A contract
extends only to the things concerning which it appears the par-
ties intended to contract.   Upon his re-election to the office of
treasurer the plaintiff was required to give a new official bond,
and the deputy whom he continued in place should also have
been required to give a new official bond.   Both the plaintiff
and defendant knew this when the bond before us was executed.
It cannot be presumed that defendant contemplated the plaintiff's
probable re-election, and in case of re-election, that plaintiff
would fail to demand new security of his deputy, and thereupon
defendant be bound by the instrument he had executed as a con-
tinuing obligation.   Suppose, at the commencement of the second
term, *Cassebohm,* on demand of plaintiff, had given a new official
bond, would defendant still be bound by the present instrument
for subsequent wrong conduct of the deputy?   Why not?   The
execution of the second would not of itself operate as a substitute
for the first, and release the defendant.   If the law does not
authorize two official bonds, covering the same period of time,
and if the first covered the second term, the last and not the first
would be invalid as an official bond.   The argument would lead
to the result that an officer who "succeeds himself" cannot
demand a new bond from a deputy whom he may desire to con-
tinue in place.   The legislature did not intend that the officer
who is commanded to require of his deputy an official bond, and
"to fix the amount thereof," should employ his discretion in
that regard by reference to the possible employment of the
deputy for an indefinite period beyond the expiration of his own
present term.   Experience has shown that he can hardly hope
he will himself continue to be the recipient of popular favor for
more than a single term.

In Virginia the term of office of the sheriff was one year.
The condition of a bond given the sheriff by a deputy recited
that he had undertaken the duties of deputy "for and during
the term the sheriff may continue in office."   It was a common
law undertaking, and not an official bond.   Carr, J., said:

"The contract of the sheriff and his deputy being *a private contract,* not regulated as to its continuance by law, might be for more than one year," the sheriff having been reappointed, and the deputy continuing to act as such, and added: "The question is whether the parties *intended* to be bound for only one year." No opinion was rendered in *Royster* v. *Leake,* 2 Mun. 280, but it was apparently held that a bond reciting "if therefore the said James Vaughn (a deputy sheriff) shall truly and faithfully discharge, etc., *during the time of his continuance in office* of deputy sheriff," etc., bound the obligors for acts done by the deputy during a second term of the sheriff. But the marginal epitome of the case is not well expressed. The bond was dated November 15, 1802, and conditioned for the faithful performance of his duty by the deputy "during his continuance in office *until* November Court, 1804." (See note to *Munford* v. *Rice,* 6 Mun. 81. And the same court, in the case just cited, held that a deputy sheriff's bond, conditioned for faithful performance, etc., "during his continuance in office," without specifying the length of time, was binding for the transactions of one year only. (*Munford* v. *Rice* was followed in *Tyler* v. *Nelson,* 14 Gratt. 214.)

In North Carolina where the sheriff's term was one year, a sheriff was reappointed and continued to serve several successive years, retaining the same deputy. At the commencement of the first term the deputy gave bond for faithful conduct, etc., "during his continuance in office." The Supreme Court said: "A deputation of necessity expires with the office on which it depends," and held that the words "during," etc., should be restricted to the first year. (*Banner* v. *McMurray,* 1 Dev. 218.) The same thing was decided in *Thomas* v. *Summey,* 1 Jones L. 554.

In *Curling* v. *Chalkden,* 3 Maule & S. 502, decided in 1815, it was held that a bond given by a collector appointed by the church wardens and parishioners of a certain parish covered any misconduct of the collector while he remained such. Lord Ellenborough said: "I find nothing to show that his appointment is to have an annual commencement or is to terminate at the expiration of the year." And Le Blanc, J., pointed out that the collector was *not* the deputy of any annual officer, and

further, that he did not derive his appointment from any annual officer.

In *Leadly* v. *Evans*,  however, decided in 1824, it was adjudged that the bond of a .collector appointed by the church wardens and overseers of a parish, pursuant to an order of the vestry (the church wardens and overseers being annual officers), which was conditioned for his producing to them "and their *successors*" a just and true account, did *not* make the sureties liable for any sum collected after the expiration of a year. (9 Moore, 102.)

*Hughes* v. *Miller*, 5 Johns. 167, is worthy of much consideration, because the decision in that case has the sanction of the honored name of Chief Justice Kent. There the bond was given to the sheriff by a deputy, conditioned for the due execution of the office of deputy sheriff *during his continuance in such office*. The sheriff having taken on himself the office, on the 16th of September, 1801, pursuant to an appointment in August, was reappointed in March, 1803. The defendant pleaded that the sheriff had sustained no damages in consequence of any act of defendant previous to his taking upon himself the office under his reappointment in 1803. It was held the plea was no answer to the declaration. The court said the deputy was equally in office as such after as before the reappointment of the plaintiff; that the deputy had no concern with the renewal of the plaintiff's commission so long as there was an unbroken continuation of the plaintiff's authority.

As we have seen, this view of the question does not accord with that taken by other courts. But it is enough to say that the bond was not an official bond, and the decision simply interprets a private contract, holding that the parties intended that the obligors should be bound during the time the deputy continuously acted as such.

In the case before us the bond is an official bond, and an official bond is given for and has reference to a particular official term. (*People* v. *Aikenhead*, 5 Cal. 106; *Brown* v. *Lattimore*, 17 Cal. 93.) Here there is a recital that the plaintiff "treasurer" has appointed *Cassebohm* deputy, and has required of him to file a bond in a certain sum, which should be referred to the requirement commanded by section 985 of

the Political Code. A treasurer cannot appoint a deputy to hold for a longer term than his own. If the treasurer shall be re-elected, and the deputy continue, the retention of the latter by the former may be construed, as against the treasurer, to be a reappointment, but the deputy holds his place by virtue of the implied reappointment, and not under his original appointment. The condition of the bond before us is, "if the above bounden *William Cassebohm* shall well and truly execute the duties of chief deputy," etc., which naturally and necessarily refers to the appointment he had received.

Counsel for appellant places much stress upon the language used by the court of chancery of South Carolina in *The Commissioners* v. *Greenwood,* 1 Desaus. Eq. 450.

There a treasurer was reappointed, but gave no new bond. The court held that the bond given at the commencement of the first term did not cover his acts during his second administration. In the course of his opinion the chancellor said: "This cause is altogether different from that of the deputy postmaster. He was continued in office under the original appointment by the person who first appointed him." This reference to some cause, the title of which is not given (but which had probably been mentioned by counsel in argument), is not rendered more definite by the argument, for the argument of counsel is not reported. The South Carolina case was decided in 1795, and the case referred to by the court is *probably* an English case. If we were permitted an effort to identify the "deputy postmaster's case," we should hazard the conjecture that it was *Lord Arlington* v. *Merricke* (*Temp. Car.* II.), which *Patterson and Williams,* in a note to the report of it, say has been considered a leading case on the subject ever since. (2 Saund. 414.) *Lord Arlington* v. *Merricke* was brought upon the bond of a deputy postmaster, the condition of which recited: "Whereas, the above name, *Henry Lord Arlington,* postmaster-general to the king's most excellent majesty, by his sufficient instrument in writing under his hand and seal bearing date, etc., has deputed the above bounden *Thomas Jenkins* to be his deputy postmaster of the stage of Oxen above said, to execute the said office from the 24th day of June next coming *for the term of six months following.* Now, if the said Thomas Jenkins, his

deputies, servants, and assigns do and shall, for and during *all the time he, the said Thomas Jenkins, shall continue deputy postmaster of said stage,* well, truly, faithfully, and diligently do, execute, and perform all and every the duties belonging to the said office of deputy postmaster of the said stage, . . . . then this obligation will be void," etc.

" For the matter of law Hale, Chief Justice, said that the condition shall refer to the recital only by which the defendant was bound only for six months, and not longer, and that for the reason above alleged by *Saunders.* · And of such opinion was the court; and *Twysden* cited a case between *Horton* v. *Day,* which is entered in this court in *Mich.* 22 *Car.* 1 *Role,* 468 or 408, where in a condition of an obligation it was recited that a sheriff had appointed the defendant bailiff of a hundred within his county, ' if, therefore, the defendant shall duly execute all warrants to him directed, that then,' etc., it was adjudged that the words 'all warrants' should be intended to be only all warrants which were directed to the defendant *as bailiff of the said hundred,* and not other warrants.   And so here the words 'during all the time' shall be intended but only during the six months recited in the condition."

" The reason above alleged by *Saunders*" is found on the preceding page, where it appears *Saunders,* as counsel for defendant, argued: " The defendant by the intention of the condition was not to be responsible for *Jenkins* for any longer time than for the said six months, although the words are that *Jenkins, during all the time that he shall continue deputy postmaster,* indefinitely *shall observe and perform,* etc., yet this time, which is indefinite in itself, ought to be construed only for the said six months for which the condition recites that *Jenkins* was appointed to be deputy postmaster, and the rather because *Jenkins* cannot continue deputy postmaster for any longer time than for the said six months, unless he be appointed anew, and have a new deputation for a longer time.   And he said that by the construction which the plaintiff's counsel would put upon it the defendant would be tricked; for it appears that the defendant intended to be bound for *Jenkins* for the due execution of the said office only for six months; but the plaintiff

would have the defendant bound during the whole life of *Jenkins*, which is unreasonable to suppose."

If *Lord Arlington* v. *Merricke* is the case referred to by the South Carolina chancellor, it certainly, as he remarked, differs from the case before him. It does not, however, sustain. the position of appellant in the case at bar.

The cases in which bonds given to individuals or private corporations have been construed are not authorative adjudications with reference to the question before us. Such matters are subject of private contract, by which the parties may bind themselves in any manner or to any extent, not violative of public policy or positive statute.

The first and second counts do not state a cause of action, because they do not allege a defalcation or misappropriation by *Cassebohm* during the period. for which alone the obligors, who executed the instrument sued on, became his sureties.

The judgment of the Superior Court is reversed. The cause is remanded, with direction to the court below to set aside the order sustaining the defendant's demurrers, and to enter an order or orders overruling defendant's demurrer to the complaint as a whole, and overruling the demurrer to the third count of the complaint, and sustaining the demurrer to the first and second counts thereof.

SHARPSTEIN, J., MYRICK, J., THORNTON, J., ROSS, J., and McKEE, J., concurred.