SOUTHERN SURETY COMPANY ET AL. *v.* KINNEY.

[No. 10,155. Filed May 24, 1920. Rehearing denied November 18, 1920.]

1. COUNTIES.—*Officers.—Deputies.—Deputy County Treasurer.*— A deputy county treasurer is a public officer under §§9158, 9159, 9160 Burns 1914, §§5568, 5569, 5570 R. S. 1881. p. 212.

2. COUNTIES. — *Officers. — Deputies. — Bonds. — Deputy County Treasurer.*—The bond of a deputy county treasurer given in pursuance of §9478 Burns 1914, §5914 R. S. 1881, is an official bond. pp. 213, 217.

3. OFFICERS.— *Official Bonds.— Defects.— Curative Statutes.— Deputies.*—The bond of a deputy county treasurer is official although it names the treasurer as obligee instead of the State of Indiana, as required by §9111 Burns 1914, §5528 R. S. 1881, and although it was not approved by nor deposited with any officer having statutory authority in that regard, as provision is made for the cure of such defects by §§1278, 9113 Burns 1914, §§1221, 5530 R. S. 1881. p. 215.

4. OFFICERS. — *Actions on Bonds. — Suggestion of Defects.— Pleading.*—In an action on an official bond, where the bond is an exhibit to the complaint and shows on its face a defect or failure to meet statutory requirements, such showing constitutes a sufficient suggestion of defects to bring into operation the provisions of §§1278, 9113 Burns 1914, §§1221, 5530 R. S. 1881. p. 215.

5. COUNTY TREASURERS.— Deputies.— Bond Mandatory.— Words and Phrases.—"May."—The authority to the county treasurer to take bond and surety from his deputy by §9478 Burns 1914, §5914 R. S. 1881, is not necessarily permissive rather than mandatory, as the word "may" will be construed to mean "shall" where necessary to protect the rights of third persons or the public.    p. 216.

6. OFFICERS.—Bond.—Conditions Imposed by Statute.—Restrictive Provisions.—Sureties.—The conditions imposed by provisions of the statutes concerning official bonds are parts of such a bond though not written therein, and which sureties are bound to know, and the latter are powerless to change the obligations assumed by inserting in the bond any restrictive provision.    pp. 217, 220.

7. LIMITATION OF ACTIONS.—Official Bonds.—Restrictive Provisions.— Counties.— Officers.— A provision in the bond of a deputy county treasurer requiring any default to be discovered during his term or within six months thereafter, is void, as from §§1278, 9111 Burns 1914, §§1221, 5528 R. S. 1881, it is the evident intent of the legislature to require such bonds as protection regardless of when defaults may be discovered, subject, however, to the limitation provided in §295 Burns 1914, §293 R. S. 1881, as to the time in which an action based on any such default may be commenced.    pp. 217, 220.

8. CORPORATIONS.— Actions Against.— Change of Judge.— Requisites as to Affiant.—Venue.—An application for change of judge supported by the affidavit of the claims attorney for a corporation is insufficient under §422 Burns 1914, §412 R. S. 1881, where it does not appear that affiant was an executive or administrative officer, such as president, vice-president, secretary or treasurer, or bore any relation to the corporation other than as stated.    p. 219.

9. APPEAL.—Theory on Trial Binding on Appeal.—Exception to Rule.—The general rule that the theory adopted by the court and parties in the trial of a case will be followed on appeal, is not applicable where the cause proceeded to a correct result on an erroneous theory more favorable to the losing party than the facts warranted, and in which all the grounds for recovery on the correct theory were within the issues, were fully tried out, and are sustained by the evidence.    p. 222.

10. INDEMNITY.— Bonds.— Defalcation Exceeding Amount Reported to Indemnitor.—Officers.—Where the county treasurer reported to the bonding company an amount of shortage in the accounts of his deputy, and later, upon request of the latter for particulars, reported a detailed statement showing shortage in a larger sum, which was sustained by the evidence, a re-

covery of the latter amount is justified as against any objection based on the first report. p. 223.

11. APPEAL.—*Harmless Error.—Instructions.*—Reversible error cannot be predicated upon the giving of instructions more favorable to the appellant than the law warrants. p. 224.

12. TRIAL.—*Instructions.—Omission to Point Out Material Allegations.*—The omission to point out the material allegations of the complaint does not render an instruction erroneous. p. 224.

13. TRIAL.— *Instructions.— Assumption of Undisputed Fact.*— The assumption of a fact supported by the undisputed evidence and not contradicted, does not render an instruction erroneous. p. 224.

14. OFFICERS.—*Bonds.—Actions.—Limit of Recovery.—Instructions.*—In an action on an official bond, an instruction on the amount of recovery should have limited the amount to the penalty of the bond and interest. p. 224.

15. APPEAL.—*Curing Error.—Remittitur.—Instructions.*—Where by remittitur the amount of recovery is corrected, an error in instructing as to interest allowable, leading to a verdict excessive before remittitur, is fully cured. p. 224.

16. APPEAL.—*Briefs.— Review.— Evidence.*— Questions concerning · the admissibility of evidence are not presented where it is not shown by the brief what, if any, objections were made at the time. p. 226.

17. OFFICERS.—*Bonds.—Recovery.—Valuation and Appraisement Laws.*—Under §604 Burns 1914, §577 R. S. 1881, judgment on the bond of a deputy county treasurer for defalcations in office should be without relief from valuation and appraisement laws. p. 226.

From Dubois Circuit Court; *John L. Bretz,* Judge.

Action by John C. Kinney against the Southern Surety Company and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*Ralph E. Roberts, William C. Mason, L. N. Savage, Leo H. Fisher* and *Elbert M. Swan,* for appellants.

*Arch Stevenson, John R. Brill, Frank H. Hatfield* and *John W. Brady,* for appellee.

BATMAN, J.—Appellee brought this action in the Spencer Circuit Court against appellant Southern

Surety Company, on a bond given by appellant Beasley, as his deputy county treasurer, alleging a breach of the bond, by reason of which appellee was required to and did pay to said county the sum of $4,952.65. During the pendency of this action appellant Beasley was made a party defendant.

The complaint is in a single paragraph and alleges, among other things, that appellee, on January 30, 1913, was the duly elected, qualified and acting treasurer of Spencer county, Indiana, and that appellant Beasley was his duly qualified and acting deputy in said office, and so continued until the expiration of his term on December 31, 1914; that appellant company, on said January 30, 1913, in consideration of an annual premium of $20, executed to appellee its indemnifying bond in the sum of $5,000, by which it guaranteed that said Beasley would faithfully perform the duties of his office, and faithfully account to appellee for all moneys received by him as such deputy; that said bond, as originally executed, only covered the year 1913, but, by a written agreement, based on a valuable consideration, it was continued in force until January 22, 1915; that during the time covered by said bond said Beasley, as such deputy treasurer, collected moneys due said county in the sum of $4,952.65, which he wrongfully and unlawfully appropriated to his own use and at the expiration of his office, failed, neglected and refused to account for the same or any part thereof, and has continuously since said time wrongfully and unlawfully withheld the same; that, subsequently to the expiration of appellee's term of office, to wit, on August 27, 1915, the default and failure of said Beasley was discovered; that, on the following day, appellee, in pursuance of the terms of said bond, gave to said company a written notice of the wrongful acts of said Beasley and his failure to account for said moneys coming into his hands as aforesaid

and named the amount thereof as $4,836.72; that said company accepted said notice and acted thereon, waived any objection to the time of receiving it, and sent its representative to said county to investigate the amount of the embezzlement by said Beasley. (Here follows a recital of certain communications that passed between appellee and said company with reference to the terms of said bond, the furnishing of information thereunder, and of appellee's efforts to comply with the terms, and the requests made by the company with reference to the default of said Beasley.) The complaint further alleges that the amount so collected and wrongfully retained by said Beasley was the money of the county, and that, by reason of such fact, appellee was required to pay, and did pay, thereto the said sum of $4,952.65, for and on account of said Beasley; that by reason thereof the company became indebted to appellee in said sum, which, together with interest thereon, is now due and wholly unpaid; that appellee has fully complied with all the terms of said bond by him to be performed, except such as have been waived, but that said company has failed to comply with such terms, in that it has refused to pay appellee said amount last aforesaid. The complaint concludes with a demand for judgment in the sum of $6,000, and is accompanied by copies of the several written instruments referred to therein as exhibits.

A change of venue was taken to the Dubois Circuit Court, where said company filed an answer in four paragraphs. The first paragraph is a general denial. In the second paragraph it is alleged that the following condition contained in said bond with reference to the discovery of the alleged pecuniary loss claimed was not met:

"Now therefore this bond witnesseth: That for the consideration of the premises, the company shall

during the term above mentioned or any subsequent renewal of such term, and subject to the conditions and provisions herein contained at the expiration of three months next, after proof satisfactory to the Company, as hereinafter mentioned, make good and reimburse to the employer such pecuniary loss as may be sustained by the employer by reason of the fraud or dishonesty of the said employee in connection with the duties of his office or position amounting to embezzlement or larceny, and which shall have been committed during the continuance of said term or of any renewal thereof, and discovered during said continuance or of any renewal thereof, or within six months thereafter or within six months from the death or dismissal or retirement of said employee from the service of the employer within the period of this bond, whichever of these events shall first happen."

In the third paragraph it is alleged that the following provision contained in said bond was violated:

"Provided, That on the discovery of any act capable of giving rise to a claim hereunder, the employer shall, at the earliest practical moment, give notice thereof to the company and any claim made under this bond shall be in writing addressed to the Company at its general offices in the City of St. Louis, Mo., and shall within three months after the discovery thereof at the Employer's expense furnish to the Company reasonable particulars and proofs of the correctness of said claim and such particulars if required shall be verified by affidavit."

In the fourth paragraph it is alleged that no liability exists against it on said bond by reason of the following provision contained therein:

"Provided further, That the Company shall not be liable by virtue of this bond, for any act or thing done or left undone by the employee, in obedience to or in the pursuance of any instructions or authorization received by him from the employer or any superior officer, or for any mere error of judgment or bona fide mistake, or any injudicious exercise of discretion on the part of the employee, in and

about all or any matters wherein he shall have been vested with discretion either by instruction or by the rules and regulations of the employer."

Appellant Beasley also filed four paragraphs of answer, which were in substance the same as those filed by his coappellant. Appellant company filed a cross-complaint against its coappellant, alleging suretyship, to which an answer was filed by the defendant thereto, admitting its allegations. Appellant company thereafter filed an application for a change of judge, which was overruled.

Appellee filed a separate reply in three paragraphs to the second and third paragraphs of the separate answers of each of the appellants. The first paragraphs of said replies are general denials. The second paragraphs allege a waiver of the defenses pleaded therein. The third paragraphs plead an estoppel to set up the facts alleged in said paragraphs of answer as a defense. Appellee also filed a separate reply in general denial to the fourth paragraph of answer of each appellant.

The cause was submitted to a jury for trial, which returned a verdict in favor of appellee for $5,348, and found that appellant company was surety for its coappellant. The jury also returned with its general verdict answers to three interrogatories submitted to it. Appellants each filed a motion for judgment on the answers to the interrogatories, notwithstanding the general verdict, which motions were overruled. Judgment was thereupon rendered in favor of appellee against both appellants for $5,348, without relief from valuation and appraisement laws and, as between the appellants, adjudged that said company was surety for its coappellant. Appellants filed a motion for a new trial, which was overruled upon appellee filing a remittitur of all of the judgment in excess of $5,248. Appellants thereupon filed a motion to modify the judg-

ment, which was overruled. Appellants are now prosecuting this appeal on assignments of errors, which require a consideration of the questions hereinafter determined.

The record discloses that the court submitted to the jury three interrogatories, which were duly answered, and by which it was found that the term of said Beasley, as deputy treasurer under appellee, expired on December 31, 1914; that the alleged default of said Beasley was first discovered after August 1, 1915; that appellee did not discover any shortage in the account of said Beasley, as such deputy treasurer, prior to August 1, 1915. Appellants contend that, in order to create a liability on the bond in suit, it was necessary that the alleged default must have been discovered during the term of said Beasley as deputy treasurer, or within six months after the termination thereof; that the answers to the interrogatories show that such term expired on December 31, 1914, and that the alleged default of said Beasley, as such deputy treasurer, was not discovered until more than six months thereafter; that these facts are in irreconcilable conflict with the general verdict, and hence the court erred in overruling their separate motions for judgment on the answers to the interrogatories, notwithstanding the general verdict. In considering this contention, we must first determine whether or not the bond in suit is an official bond.

There is no contention that said Beasley was not a deputy treasurer under appellee during the time alleged in the complaint. The statute provides for the appointment of deputies by county treasurers. They are required to take the oaths of their principals, and are authorized to perform all their duties, subject to the same regulations and penalties. Such treasurers are responsible for all the official acts of their deputies, and liable on their official bonds therefor.

§§9158-9160 Burns 1914, §§5568-5570 R. S. 1881. It has been held in many jurisdictions that persons who are appointed deputies under a statute are public officers. *Wells* v. *State, ex rel.* (1911), 175 Ind. 380, 94 N. E. 321, Ann. Cas. 1913C 86, and cases there cited. In the case just cited, it was held that a deputy county auditor was essentially a public officer, and the same reasons there advanced lead us to conclude that a deputy county treasurer is likewise a public officer.

Section 9478 Burns 1914, §5914 R. S. 1881, provides that a county treasurer may appoint one or more deputies, and *may take from them bond and surety.* The bond in suit recites that:

2.

"Whereas, John C. Kinney, *County Treasurer* of Spencer County, Ind., hereinafter called the Employer, is employing or intends to employ Frank H. Beasley in the capacity of Deputy County Treasurer, hereinafter called the Employee, and has filed with the Southern Surety Company, hereinafter called the Company, an application specifying the amount of Security *required* from said Employee. * * * Now therefore this bond witnesseth, that for the consideration of the premises The Company shall * * * make good and reimburse to said Employer for such pecuniary loss as may be sustained by the Employer by reason of the fraud or dishonesty of said Employe in connection with the duties of his *office* or position, amounting to embezzlement or larceny, etc." (Our italics.)

Thus we have a case where a public official gives a bond required of him by his superior, in pursuance of a statute in that regard, and in which bond the official capacity of such officer is expressly recognized, and an obligation is assumed to make good losses sustained by reason of his fraud or dishonesty in connection with his office. It has been held that a bond, taken in pursuance of a public statute, falls under the description of an official bond. *Faurote* v. *State, ex rel.* (1887), 110 Ind.

463, 11 N. E. 472; *Hart* v. *State, ex rel.* (1889), 120 Ind. 83, 21 N. E. 654, 24 N. E. 151; *Herod* v. *State, ex rel.* (1896), 15 Ind. App. 648, 43 N. E. 144, 44 N. E. 378. Or, as sometimes stated, a bond taken pursuant to the requirement of a statute is an official bond. *United States Fidelity, etc., Co.* v. *Poetker* (1913), 180 Ind. 255, 102 N. E. 372, L. R. A. 1917B 984. The bond in suit was evidently given in pursuance of §9478, *supra,* and therefore is an official bond within the meaning of the first definition given. But if it be held that a bond, to be an official bond, must not only be given in pursuance of a statute, but must be given because of a requirement thereof, still the bond in question would nevertheless be an official bond, since the statute at least gave appellee the right to require the bond, and, when so required, it in effect became the requirement of the statute. To hold that a bond, to be an official bond, must be given in pursuance of a mandatory, rather than a permissive statute, would be to make a distinction not warranted by any sufficient reason. The Supreme Court of California, in the course of an opinion involving the bond of a deputy treasurer, given in pursuance of a permissive statute, said: "Every bond demanded of and given by a deputy for the faithful discharge of his duties * * * is an official bond." *Hubert* v. *Mendheim* (1883), 64 Cal. 213, 30 Pac. 633. The same statement is found in 22 R. C. L. 587. Mechem, in his work on Public Officers, at page 170, makes the following statement with reference to the bonds of deputies: "Statutes which expressly authorize officers to appoint deputies, usually permit or require the taking of bonds from them, and prescribe their terms and conditions. Bonds taken under such statutes would be subject to the same considerations which apply to other official bonds."

In this connection it may be noted that the bond in suit does not conform to the provisions of §9111 Burns

1914, §5528 R. S. 1881, respecting obligees in
3-4. official bonds, nor is there any evidence that it
was approved by, or deposited with, any officer
having statutory authority in that regard. We are of
the opinion, however, that such facts do not have the
effect of rendering such bond an unofficial contract.
Section 1278 Burns 1914, §1221 R. S. 1881, makes the
following provision applicable to official bonds: "In all
actions on a defective bond, recognizance, or written
undertaking, the plaintiff or relator may suggest the
defect in his complaint, and recover to the same extent
as if such bond, recognizance, or written undertaking
were perfect in all respects." Section 9113 Burns 1914,
§5530 R. S. 1881, provides that: "No official bond shall
be void because of defects in form or substance or in
the approval and filing thereof, but upon the suggestion
of such defects, such bond shall be obligatory as if prop-
erly executed, filed and approved." In the case of *State*
v. *Soudriette* (1886), 105 Ind. 306, 4 N. E. 860, the Su-
preme Court had under consideration a recognizance
in which the obligors were bound unto the city of Vin-
cennes instead of unto the State of Indiana, and held
that such fact would not prevent a recovery thereon in
an action by the state. In the case of *United States,
etc., Co.* v. *Union Trust, etc., Co.* (1904), 142 Ala. 532,
38 South. 177, the court had under consideration an of-
ficial bond, and in the course of its opinion said: "It
would be immaterial whether such bond is in terms pay-
able to the state: The law makes it so payable." This
case was cited and the above statement, among others,
was quoted with approval by the Supreme Court of this
state in the case of *United States Fidelity, etc., Co.* v.
*Poetker, supra.* The State of California has a statute
which requires all official bonds to be made payable to
the state, and also a curative statute to be applied where
such bonds do not contain the substantial matter or con-

ditions required by law or where there are any defects in the approval or filing thereof. In the case of *Hubert* v. *Mendheim, supra,* the appellant had appointed one Cassebohm a deputy treasurer in his office, and had taken a bond from him payable to himself instead of to the state as the statute required. The court, in considering the validity of such bond, said: "The bond executed by Cassebohm is none the less an *official bond* because it is made payable to plaintiff and not to the State of California." See also, the case of *United States, etc., Co.* v. *McLaughlin* (1906), 76 Neb. 307, 107 N. W. 577, 109 N. W. 390. It will be observed that it is provided in §§1278, 9113 Burns 1914, *supra,* that a recovery may be had upon official bonds, defective because of the omissions therein stated, by the plaintiff suggesting such defect. Where such bond shows upon its face the defect or failure to meet the statutory requirements, the complaint need not further suggest it. *United States Fidelity, etc., Co.* v. *Poetker, supra.* The sections of the statute and authorities cited fully sustain our conclusion with reference to any defects in the bond.

Thus far we have considered §9478 Burns 1914, *supra,* as being merely permissive rather than mandatory, but the language used does not necessarily require

5. that it be so construed. Said section provides that a county treasurer "may appoint one or more deputies and may take from them bond and surety." It is well settled that in the construction of statutes the word "may" will be construed synonymous with "shall" where public interests and rights are concerned, and where the public or third persons have a claim *de jure* that the power should be exercised. *Nave* v. *Nave* (1855), 7 Ind. 122; *Bansemer* v. *Mace* (1862), 18 Ind. 27, 81 Am. Dec. 344; *City of Madison* v. *Smith* (1882), 83 Ind. 502; *Zorn* v. *Warren, etc., Paving Co.* (1908), 42 Ind. App. 213, 84 N. E. 509. The statute provides

that the deputies of county treasurers "shall take the oath of their principals and may perform all the duties of such principals." §§9158, 9159, *supra*. We know as a matter of common knowledge that such deputies, as a rule, receive and disburse public funds, and in some instances, as appears in the case at bar, have practically the entire control of the office. The funds thus entrusted to such officials are not the private funds of their superiors, but public funds, in which every taxpayer has an interest. The public is therefore concerned as to its safety, and has a right to demand that the officer primarily charged with the duty of receiving and disbursing such funds shall take every precaution to prevent its loss or impairment which the law provides. It is not a sufficient answer to say that the law makes the treasurer and his sureties responsible for the official acts of his deputies. That is merely one provision made for the safety of public funds entrusted to them, and may as a rule suffice for such purpose, but it is entirely within the realm of possibility that, where a deputy treasurer becomes a defaulter, his principal and sureties might all prove to be insolvent. The public, having a direct interest in the funds, has a right to demand not only that one precaution provided by statute be taken for their safety, but that every precaution so provided be taken.

We therefore conclude that whether §9478, *supra,* be construed as being permissive or mandatory, a bond given in pursuance thereof is an official bond,

2. and that the bond in suit being so given is a bond of that character.

Having reached the conclusion that the bond in suit is an official bond, we must now determine whether the fact that the default of said Beasley, resulting in

6-7. the alleged loss to appellee, was not discovered until more than six months after the expiration

of his term of office, as found by the answers to the interrogatories, relieves appellants from liability on such bond. We note that the statute makes the following provisions:

"No official bond entered into by an officer    *    *    * shall be void for want of form or substance or recital or condition, nor the principal or surety be discharged; but the principal and surety shall be bound by such bond *    *    *    to the full extent contemplated by the law requiring the same    *    *    *." §1278, *supra.*

"All official bonds shall be payable to the State of Indiana; and every such bond shall be obligatory to such state upon the principal and sureties, for the faithful discharge of all duties required of such officer by any law, then or subsequently in force, for the use of any person injured by any breach of the condition thereof." §9111, *supra.*

These provisions of the statute, although not written into the bond in suit, are a part of it and enter into a determination of the rights and liabilities of the obligors thereon. When appellants executed such bond they were bound to know the conditions imposed by the statute, and were powerless to change the obligations thereby assumed by inserting therein any restrictive provisions. *United States Fidelity, etc., Co.* v. *Poetker, supra; United States, etc., Co.* v. *McLaughlin, supra.* It was evidently the intention of the legislature by the enactment of the provisions cited to require that all official bonds should serve as a protection against defaults of the officer giving the same, regardless of when such defaults might be discovered, subject, however, to the limitation provided in §295 Burns 1914, §293 R. S. 1881, as to the time in which an action based on any such default may be commenced. We therefore conclude that the provision with reference to the time in which the pecuniary loss arising from the default of

said Beasley must have been discovered in order to create a liability is of no effect.   This being true, it follows that the court did not err in overruling appellants' motions for judgment on the answers to the interrogatories, notwithstanding the general verdict.

Appellants in their motion for a new trial have assigned as one of the reasons therefor that the court erred in overruling the motion of appellant company for a change of judge.   Appellee, in support of the action of the court in denying such change, urges a number of reasons against the sufficiency of the application therefor, but we need only consider the one relating to the right of a mere agent or attorney of a corporation to make an affidavit for a change of judge under §422 Burns 1914, §412 R. S. 1881.   The record discloses that the application for such change was verified by one L. L. Smith, who stated therein, "that he is claims attorney for the defendant, Southern Surety Company, in the above entitled cause, and as such has authority to make this affidavit."   It appears that said appellant is a corporation, but it does not appear that said Smith was an executive or administrative officer thereof, such as president, vice-president, secretary or treasurer, or that he bore any relation thereto other than stated in such application. Under these circumstances we must hold that such application was insufficient, and that the court did not err in overruling appellant's motion for such change. *Fidelity, etc., Co.* v. *Carroll* (1917), 186 Ind. 633, 117 N. E. 858.

Appellants also contend that the verdict is not sustained by sufficient evidence and is contrary to law.   It bases this contention on a claim that the evidence fails to show the following facts, which it asserts are essential to a right of recovery under the terms of the bond:   (1) That the default in question was discovered

during the term of said Beasley's deputyship, or within six months after its termination, or within six months after the renewal of the bond in suit; (2) that appellee furnished appellant company every aid and assistance not pecuniary, capable of being rendered by him in bringing said Beasley promptly to justice.

In answering appellants' claim as to said first alleged failure it suffices to say that, in view of the conclusion announced above, in holding that the trial court

7.  did not err in overruling the respective motions of appellants for judgment in their favor on the answers to the interrogatories, notwithstanding the general verdict, it is obvious that the contention of appellants as to the effect of any such failure cannot be sustained. As to said second alleged failure stated above, we are compelled to hold that it is also without any effect in the bond in suit, and hence, if such

6.  failure be conceded, it would not sustain appellants'. contention. We have reached this conclusion through a consideration of the fact that the bond in suit is an official bond and, being such, the obligors thereon could not relieve themselves from the liability imposed by statute by inserting therein restrictive provisions. This we believe is well settled. In the case of *Western, etc., Ins. Co.* v. *Board, etc.,* (1916), 60 Okla. 140, 159 Pac. 655, L. R. A. 1917B 977, the court had under consideration a bond given by a bank as a county depository, in pursuance of a statute in that regard, which undertook to limit the liability of the obligors thereon by the following provision inserted therein: " 'That in the event of any default on the part of the principal, written notice thereof, with a certified statement of the facts showing such default and the date thereof, shall within thirty days after such default, be delivered to the surety at its office in the city of Oklahoma City, Okla.' " The surety in that case sought to

escape liability on the ground that such notice had not been given, but the court held that such provision was ineffective and inoperative. It based its conclusion on the fact that the bond in suit was a statutory bond, given by the bank to protect the county against the nonperformance of its duties; that the provision relied upon by the surety was an unauthorized restriction upon its liability, and must therefore be treated as mere surplusage. We believe the conclusion reached by the court in that case is not only supported by the authorities cited, but by the reasons for the rule, founded on public policy, which makes a distinction between the rights and liabilities of sureties on private bonds, and sureties on bonds given to secure the performance of official duties by public officers. The Supreme Court of this state has recognized this distinction, and has reached the same conclusion with respect to such restrictive provisions in official bonds. In the case of *United States Fidelity, etc., Co.* v. *Poetker, supra,* the court had under consideration the effect of certain provisions of an official bond similar to the one considered by the court in the Oklahoma case, and also to the one under consideration in the instant case and, after citing many authorities, reached the conclusion that the liability of the surety on the bond there involved must be measured by the breach of the simple condition that the principal would honestly and faithfully discharge the duties of his office, unaffected by any of the restrictive provisions contained therein. We are clearly of the opinion that these authorities fully sustain the conclusion we have reached that both of the restrictive provisions of the bond in suit on which appellants rely are without force or effect.

But appellants, in an effort to avoid the effect of the conclusion we have reached, contend that this court must treat the bond in suit as an unofficial bond and deter-

mine this appeal accordingly. It bases this con-
9. tention on the fact that appellee, in determining
the appropriate form of this action, elected to treat
the bond as a private or unofficial bond; that the issues
were joined, and the cause tried, on such theory; that
under these circumstances appellee cannot now change
his theory, and ask this court on appeal to determine
the questions presented on a theory different from that
on which the issues were made and cause tried. In
making this contention appellants rely upon the rule
often announced that the theory adopted by the court
and the parties in the trial of a case will generally be
accepted and followed by the appellate tribunal. We
recognize this to be the general rule, but it is not ap-
plicable where a cause proceeds to final judgment in
the trial court on an erroneous theory which is more
favorable to the losing party than the facts warrant,
and in which all the grounds for recovery on the correct
theory are within the issues and have been fully tried
out. To grant a new trial under such circumstances
would be to sacrifice the merits of a cause to mere pro-
cedure. *Southern R. Co.* v. *Howerton* (1914), 182 Ind.
208, 105 N. E. 1025, 106 N. E. 369. In the instant case
the record discloses that the cause was evidently tried
on the theory that the bond in suit was a private bond,
and that therefore it was not only necessary that appel-
lee should prove the execution of the bond and the
defalcation of the said Beasley, while acting as his dep-
uty, but that it was also necessary for him to prove
that such defalcation was discovered within the time
specified in such bond, and that he had complied with
certain restrictive provisions thereof or that such dis-
covery and compliance had been waived. Under the
construction we have placed on the bond in suit, appel-
lee was not required to assume such burden, and it was
error for the court to impose the same upon him. How-

ever, all the facts necessary to a recovery without such burden were within the issues on the theory on which the cause was tried, and are sustained by the evidence. Hence, under the rule stated above, we would not be justified in holding that the court erred in overruling appellants' motion for a ·new trial, because the cause was tried on an erroneous theory.

Appellants urge two grounds in support of their contention that the assessment of the amount of recovery is erroneous, being too large, viz.: (1) That the recovery is almost $100 in excess of the defalcation first reported by appellee to appellant company, and interest thereon after three months from the attempted proof of loss; (2) that a recovery could be had, by the terms of the bond, for only such default as may have occurred under the renewal of the same for one year from January 22, 1914, and that the evidence fails to show that all of the defalcations included in the amount of recovery occurred within the period of such renewal. As to the first ground urged by appellants in support of such contention it suffices to say that the record discloses that appellee first reported that the defalcation of said Beasley under the bond in suit was $4,836.72; that appellant company afterwards notified appellee that, if he intended to urge a claim against it on account of such defalcation, he should furnish it "reasonable particulars and proofs of the correctness of such claim"; that appellee, in due time thereafter, furnished said company with a detailed statement of such defalcation, showing the correct amount thereof to be $4,952.65. There is evidence tending to show that the actual amount of said defalcation was the sum last named. Under these circumstances the amount of recovery cannot be said to be erroneous, because of a failure to give the true amount of such defalcation on the first report thereof. We have considered the second

ground urged by appellants in support of their contention that the amount of recovery is erroneous, but have not been able to find any enforceable provision of the bond which could properly be construed to limit appellee's right of recovery, as therein contended. This being true, we need not review the evidence in that regard.

Appellants contend that the court erred in giving certain instructions, and in refusing to give certain instructions requested by them. A number of the instructions given which appellants assert are erroneous relate to the question of a waiver of certain provisions of the bond in suit, which we have held are of no effect. These instructions are more favorable to appellant than the law warrants, and hence they cannot predicate reversible error on the action of the court in giving them. *Grand Trunk, etc., R. Co.* v. *Thrift Trust Co.* (1918), 68 Ind. App. 198, 115 N. E. 685, 116 N. E. 756.

Appellants base their objections to instruction No. 1, given on the request of appellee, on the fact that the court failed to point out the material allegations of the complaint, but left their determination to the jury. It has been held that such failure or omission does not render an instruction erroneous. *Southern Indiana R. Co.* v. *Peyton* (1902), 157 Ind. 690, 61 N. E. 722; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438, 78 N. E. 1033; *Vandalia Coal Co.* v. *Coakley* (1916), 184 Ind. 661, 111 N. E. 426.

Appellants claim that instruction No. 9, given on the request of appellee, is erroneous because it invades the province of the jury by stating the date on which the last proofs were furnished by appellee to appellant company, authorizes the adding of interest to the amount of the defalcation, and a recovery in excess of the penalty of the bond. The instruction states that the evidence discloses that the last proof so

furnished was dated December 23, 1915. There was evidence to that effect, and appellants do not claim there was any dispute as to such fact. Under these circumstances, we are justified in assuming that such evidence was without contradiction, and holding that the assumption of such fact did not render such instruction erroneous. *Haskell, etc., Car Co.* v. *Timm* (1919), 73 Ind. App. 657, 122 N. E. 788. The instruction informed the jury that, if it found in favor of appellee, it should add to whatever amount it found appellee was entitled to recover on the bond sued on, interest at the rate of six per cent. per annum from the period of three months after the final proofs were furnished. The instruction should have limited the amount to which interest should be added to a sum within the penalty of the bond. However, the record shows that, prior to the overruling of appellants' motion for a new trial, appellee filed a remittitur of all of his judgment in excess of $5,248. A calculation based on this amount will disclose that any harm to appellants by reason of the failure of the court to limit the amount to which interest should be added has been fully cured. We have carefully examined the remaining instructions given by the court on request of appellee, and fail to find that reversible error was committed in giving any of them.

Appellants also complain of the action of the court in refusing to give certain instructions requested by them. Of said instructions so refused those numbered 1, 2 and 3 are peremptory instructions, and appellants have failed to point out any sufficient ground for holding that the court erred in refusing to give them or any one of them. Those numbered 5, 6, 7, and 12 relate to the time of the discovery of the defalcation in question. Those numbered 9, 10 and 11 relate to the waiver of certain conditions of the bond, while those numbered 13

and 14 relate to that provision of the bond which undertakes to make it the duty of appellee to furnish aid and assistance in bringing his defaulting deputy to justice. It is obvious, from what we have said in discussing other questions involved in this appeal, that the court did not err in refusing to give any of said instructions.

Appellants assert that the court erred in admitting certain evidence, but have failed to show in their brief what objections, if any, were made by them, or 16. either of them, when such evidence was offered in the trial court. By reason of this fact, no question with reference to the admission of such evidence is presented for our determination. *Decker* v. *Mahoney* (1917), 64 Ind. App. 500, 116 N. E. 57.

Appellants finally contend that the court erred in overruling their motion to modify the judgment by striking from the same the words, "without re- 17. lief from valuation and appraisement laws."

There was no error in overruling said motion. Section 604 Burns 1914, §577 R. S. 1881, provides as follows: "Hereafter all judgments recovered against any sheriff, constable or other public officer * * * or the sureties of any or either of them * * * for a breach of any official duty * * * shall be collectible without stay of execution or benefit of the valuation or appraisement laws of the state." This section of the statute fully sustains the action of the court in rendering the judgment as indicated, and in overruling appellants' motion to modify it.

We find no reversible error in the record. Judgment affirmed.